**U.S. INDUSTRIES, INC., Appellant,**

v.

**BLAKE CONSTRUCTION CO., INC., et al.**

**No. 83–2277.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 7, 1984.

Decided June 21, 1985.

Marx Leva, Washington, D.C., with whom Helen I. Bendix, Loyd Symington and Anthony C. Epstein, Washington, D.C., were on the brief, for appellant.

David M. Dorsen, Washington, D.C., with whom Leonard C. Greenebaum and Sonia R. Jarvis, Washington, D.C., were on the brief, for appellee.

Before ROBINSON, Chief Judge, WRIGHT and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This case arises out of the construction of the new Walter Reed General Hospital, a project which began almost a decade ago. The parties, joint venturers in the project, were frequently in disagreement and brought their differences before this court on no less than five separate occasions. The action now before us represents the end of a long and tortuous litigation trial.

The genesis of this action was a complaint filed by U.S. Industries, Inc. ("USI") to recover from Blake Construction Company ("Blake"), pursuant to a Contract of Indemnity between the parties, attorneys' fees and litigation expenses incurred in connection with six of the various lawsuits, including the present indemnity action. Blake successfully moved for summary judgment claiming, among other things, that the doctrine of *res judicata* barred USI from raising the claims asserted in this suit. USI seeks reversal, arguing that the District Court erred in finding that USI could have and should have raised its claims for indemnification in a prior proceeding. For reasons to be set forth, we agree with the District Court's determination that principles of *res judicata* barred this action. Accordingly, we affirm.

## I

The underlying transaction in this case has been described in an earlier decision of this court, *U.S. Indus., Inc. v. Blake Constr. Co.*, 671 F.2d 539 (D.C.Cir.1982), and need not be rehearsed in detail here. Briefly stated, over a decade ago, Blake, a closely-held, Washington, D.C.-based construction company, entered into a joint venture partnership with USI, a large, publicly-held company, to equip Blake with the financial wherewithal to enable Blake successfully to compete for a large hospital construction contract awarded by the U.S. Army Corps of Engineers. Pursuant to the joint venture agreement, Blake agreed to pay USI one percent of the contract price. In addition, Blake agreed to award the mechanical subcontract on the project to a subsidiary of USI, Federal Sheet Metal ("FSM").

In exchange for USI's agreeing to subject itself to substantial potential liability, Blake and its three principals, Howard, Morton and Stanley Bender, agreed to indemnify USI against "*any* and all damages, loss, costs, charges and expenses of *whatsoever* kind or nature." Record, Vol. 4, Exhibit 1 (emphasis added). This separate and admittedly sweeping indemnity agreement ("Contract of Indemnity"), under which the instant action was brought, also provided that "such payment is to be made to USI as soon as it shall have become liable therefor, whether it shall have paid out such sum or any part thereof or not." *Id.*[1] In addition, the Contract of

---

**1.** The Contract of Indemnity, described by USI as a "sweeping, all-inclusive" contract (USI Brief at 6), would appear to encompass both branches of common law indemnity—indemnity against

Indemnity authorized USI "to prove such expenses, costs and attorneys' fees *in any action or proceeding* and to include the same in *any judgment." Id.* (emphasis added). The breadth of this contract, as will become apparent, is critical in our consideration of this case.

### A

The present action under the Contract of Indemnity is, as previously indicated, the last in a lengthy line of suits that began long ago. USI first initiated an action in 1977.[2] In a suit filed in federal district court against Blake in November 1977, USI sought to recover a one percent bonding fee that Blake had failed to pay in full (the "Bonding Fee case"). In contrast to what it was destined to do in every lawsuit it initiated or defended thereafter, USI did not assert in the Bonding Fee complaint a claim under the Contract of Indemnity. Furthermore, USI did not seek to join as parties the Messrs. Bender, co-signers with Blake on the indemnity agreement, as it did in both the Subcontract and Indemnity cases.

Only nine months later, in August 1978, while the Bonding Fee case was still pending, USI brought a separate suit in federal district court seeking to recover against Blake under both the Blake-USI mechanical subcontract (for damages resulting from Blake's delay of the project and its failure to pay USI for FSM's work) and the Contract of Indemnity. The complaint in this 1978 "Subcontract case" also expressly sought recovery from the Benders under the Contract of Indemnity.[3] In every count set forth in the complaint, USI sought attorneys' fees incurred in connection with the Subcontract case itself. In addition, in Count IV of the complaint, USI asserted its right to recover, pursuant to the Contract of Indemnity, attorneys' fees incurred in connection with any action by a subcontractor that USI was either subjected to or threatened with as a result of USI's relationship with Blake. Once again, in Count VI, USI made a general claim under the Contract of Indemnity, specifically including within that claim its right to reasonable attorneys' fees and litigation expenses.[4] The Subcontract case, initially assigned to the District Judge before whom the Bonding Fee case was pending, was reassigned

liability and indemnity against loss—thus entitling USI, under settled principles of indemnity law, to sue Blake under the contract without waiting until USI is required to satisfy a judgment. *See, e.g., Johnson v. Risk,* 137 U.S. 300, 11 S.Ct. 111, 34 L.Ed. 683 (1890); *B & G Elec. Co. v. G.E. Bass Co.,* 252 F.2d 698 (5th Cir.1958).

2. Intercounty Construction Corporation, one of USI's subcontractors on the project, had previously brought suit against USI and Blake. Blake, not USI, was ultimately held liable for Intercounty's damages. *See Intercounty Constr. Corp. v. Blake Constr. Co.,* C.A. No. 75–1542 (D.C.Cir.1975).

3. *See* Appellees' Appendix at 1. The term "Subcontract," as it is used in the phrase "Subcontract case," refers to the contract entered into between Blake and USI in which Blake agreed to award the mechanical subcontract to FSM, not to any contract entered into between either USI or Blake and any other subcontractor.

4. While the complaint made no specific mention of the Bonding Fee case, both Count IV and Count VI, taken together, were broad enough to encompass all cases between the parties, including past and pending cases:

As a direct result of the wrongful actions of Blake and Morton A. Bender, USI was not only deprived of funds to which it was clearly entitled but it was also subjected to, and threatened with, claims by its own lower-tiered subcontractors who were entitled to be paid when Blake should have paid USI. Since such *actual and threatened* claims against USI were and are directly the result of the wrongful actions of Blake and Morton A. Bender, USI is entitled to be indemnified and held harmless against all such claims and related expenses, *including reasonable attorneys' fees,* by Blake and Morton A. Bender jointly and severally. [Count IV (emphasis added) ]

* * * * * *

Under the Contract of Indemnity which Blake and the Messrs. Bender executed in favor of USI, they jointly and severally agreed to indemnify and hold USI harmless against, among other things, all damages, loss, costs, charges and expenses (including, without limitation, reasonable attorneys' fees) of any nature or sort which USI might sustain or incur by reason or in consequence of, or in connection with, *inter alia,* the prime contract or the Project. [Count VI]

*See* Appellees' Appendix at 16–17, 19–20.

randomly on the ground that the case was unrelated to the Bonding Fee case. *See* Record, Vol. I, Clerk's Reassignment Order.[5]

In January 1979, five months after the Subcontract action was filed, the District Judge held a status conference at which the parties were ordered to narrow the issues in preparation for trial. No specific order, however, was entered as to the indemnity claims—including those for litigation expenses—asserted by USI throughout the complaint. Of especial relevance to our case, USI's Preliminary Statement of Contentions, submitted on May 1, 1979, made no reference whatever to any claims for attorneys' fees. There was no attempted reservation of any such claim; there was only silence in this respect.

While the Subcontract case was being prepared for trial, the Bonding Fee case was disposed of, in part, by a grant of summary judgment in favor of USI. The remainder of the case, the portion relevant here, terminated with a November 1979 entry of Final Consent Judgment; only those claims actually asserted in the Bonding Fee case were dismissed with prejudice. *See* Record, Vol. V, Docket Entry No. 57, Exhibit A, Plaintiff's Combined Response to Defendants' Statement of Material Facts as to Which There is No Genuine Dispute (filed June 1, 1982). The Bonding Fee case was thus brought to a conclusion.

The Subcontract case, in the meantime, was readied for trial. Prior to the commencement of trial, USI and Blake filed cross-motions for partial summary judgment. Blake's motion sought, *inter alia*, dismissal of USI's claims asserted on behalf of USI's subcontractors. USI's motion, on the other hand, sought summary disposition of its claim against Blake for the cost of builder's risk insurance. The District Court did not rule on the motions until the conclusion of the trial. At that time, the cross-motions for partial summary judgment were consolidated with two motions for directed verdict, filed by Blake at the close of the evidence, which sought, in part, dismissal of USI's claim under Count VI. In its March 31, 1980 order, the District Court granted Blake's motion for directed verdict as to USI's "right to recover under the Contract of Indemnity as alleged in Count VI of the Complaint" on the ground that the claim had not matured, dismissing it without prejudice. Focusing on the substantive liability for breach of contract, as opposed to any claim for attorneys' fees, the District Court held that USI's claim against the Bender brothers as cosigners with Blake on the Indemnity Contract was premature because it was not clear that Blake would fail to satisfy any judgment that might be rendered in the Subcontract case. The claim was "dismissed without prejudice to the plaintiff's right to seek recovery pursuant to the Contract of Indemnity if Blake fails, refuses, or is unable to pay all or any part of a final judgment."[6] If that occurred, then USI would, in the court's view, be able to proceed against the Bender brothers.

---

**5.** We decline USI's invitation to attach legal significance to this housekeeping determination. *See infra* p. 206. The reassignment was an administrative determination made by the chairman of the calendar committee; it was not an adjudication of the issue of relatedness *vel non*. Furthermore, the reassignment was entirely reasonable in light of the fact that the Bonding Fee case involved simple, straightforward issues and indeed was ultimately decided on a motion for summary judgment; in contrast, the Subcontract case was far more complex, encompassing virtually the full range of the parties' relationship in the entire project. Indeed, the Subcontract case ultimately required a six-week jury trial.

**6.** It is not clear whether the District Judge intended by his Order to dispose of Count VI in its

entirety as no reference is made to the *general* claim for attorneys' fees contained in that Count. It is not critical, however, that we be able to determine how much of Count VI (and Count IV) was dismissed from the Subcontract case; those parts of the various counts which addressed attorneys' fees incurred in the Subcontract case were never dismissed. Furthermore, the dismissal occurred at the close of the evidence after the proper time to present evidence on the issue had already passed. Finally, the remand in the Subcontract appeal, as we will see, did nothing more than put Count VI back in the case at precisely the point at which it was dismissed—after the close of the evidence. *See infra* p. 198.

In addition, the District Court granted Blake's motion for summary judgment as to USI's claim, asserted on behalf of its subcontractors (Intercounty and Powers) on the ground that these claims were not properly before the District Court. Also, as part of the March 31, 1980 Order, the District Court granted Blake's motion for directed verdict on USI's "claim for recovery of payment and attorneys' fees associated with the settlement of [the 1975 case]," a claim specifically asserted for the first time as part of USI's proposed jury instructions.[7] Finally, the District Court granted USI's motion for summary judgment as to the cost of builder's risk insurance. The District Court then submitted the case to the jury with detailed instructions. Subsequently, the jury returned a multimillion dollar verdict in favor of USI for Blake's disruption of USI's work. Both USI and Blake appealed.

## B

The precise events on appeal to this court in the Subcontract case are important in understanding the Indemnity case now before us. Blake lost outright in its challenge to the jury verdict; on the other hand, USI succeeded in its challenge to the dismissal of the two claims asserted on behalf of Intercounty and Powers. USI also prevailed on its challenge to the dismissal of its claim alleging that the Bender brothers were obligated under the Contract of Indemnity to satisfy the judgment should Blake fail, refuse or become unable to do so. In reversing the dismissal of USI's claim against the Bender brothers, this court held that "the contract of indemnity here involved does not require USI to obtain a judgment against Blake before proceeding against the indemnitors."[8] *U.S. Indus., Inc. v. Blake Constr. Co., supra,* 671 F.2d at 552. The court's opinion was issued in January 1982; rehearing was denied in March 1982. Mandate issued one week later and Blake paid USI on the judgment in the Subcontract case. The following day, USI and Blake executed a Stipulation of Dismissal in the Subcontract case at Blake's counsel's request,[9] stating

7. *See Intercounty Constr. Corp. v. Blake Constr. Co.,* C.A. No. 75–1542 (D.C.Cir.1975). The request for attorneys' fees incurred in connection with this earlier case was made a part of USI's requested jury instructions and also appeared in a damage computation submitted by USI in January 1980. *See* Record, Vol. II, Exhibit E at 5 and Exhibit O at 3.

8. Use of the term "indemnitors" creates an ambiguity as to which parties that term encompasses. Both Blake and the Bender brothers are indemnitors pursuant to the Contract of Indemnity. While the District Court's Order dismissed USI's claim against the Benders as premature because it was not clear that Blake would fail to satisfy the judgment, this does not mean that the Bender brothers' liability under the Contract of Indemnity was only secondary to that of Blake. On the contrary, it appears in light of the filings in the Subcontract case on appeal that Blake and the Bender brothers were deemed to be jointly and severally liable on the Contract of Indemnity. *See, e.g.,* USI Brief filed in Subcontract appeal, C.A. No. 80–1644, at 47–48, contained in Records & Briefs, U.S. Court of Appeals, D.C., Vol. 3785; *see also* Counts IV and VI of the Subcontract complaint, *supra* note 4. Blake was sued under both the Subcontract and the Contract of Indemnity. If Blake failed or refused to satisfy any judgment that might be rendered against it, then it would fail under *both* contracts. The Bender brothers were liable *only* pursuant to the Contract of Indemnity. Messrs. Bender would thus be the only parties left for USI to proceed against should Blake fail to satisfy the judgment, their liability being triggered in the first instance by Blake's failure to satisfy the judgment pursuant to the Subcontract, not Blake's failure to satisfy the judgment pursuant to the Contract of Indemnity. *See U.S. Indus., Inc. v. Blake Constr. Co.,* 671 F.2d 539, 551 (D.C.Cir.1982).

9. Because *res judicata* with respect to the jury trial in the Subcontract case is a sufficient basis upon which to affirm the District Court's holding, we need not and do not reach the issue whether the Stipulation of Dismissal, entered into by the parties in the Subcontract case, provides an independent basis for the District Court's holding that the Indemnity action was barred by principles of *res judicata.* The principal part of the Subcontract case—the jury verdict—was upheld on appeal despite a challenge by Blake. Thus, the judgment entered on the jury verdict by the District Court was final. *See* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4427, at 270 (1982). That final judgment encompassed the repeated request for attorneys' fees incurred in the Subcontract case

that Blake had paid the judgment in the Subcontract case in full and that all claims "in this action" were dismissed except the costs awarded to USI by the judgment.[10] USI Brief at 13–14.

### C

The last lawsuit to be filed in federal district court in this hydra-headed litigation was the Indemnity case now before us.[11] This new global action against Blake was filed in June 1980 by USI under the Contract of Indemnity, which it will be recalled was entered into between USI, Blake and the Messrs. Bender at the same time as the Subcontract. The suit was filed only after USI's claim against the Bender brothers under the Contract of Indemnity had been dismissed by the District Court from the Subcontract case at the close of trial. The District Court promptly determined to hold this present action, which sought recovery of litigation expenses incurred in each of the several cases arising out of the construction project, in abeyance pending resolution of the Subcontract case appeal. Specifically, the court dismissed without prejudice the parties' initial cross-motions for summary judgment in light of the appeal pending in this court in the Subcontract case. The latter appeal was thereafter decided by this court, as we have seen, in

January 1982. As already observed, this court held squarely in that appeal that the indemnity claim in Count VI had improperly been dismissed out of the Subcontract case.[12] At a status conference in the Indemnity case, held in April 1983, after the parties entered into the Stipulation of Dismissal in the Subcontract case, USI's counsel asked the District Court "not to approve" the Stipulation if it might be interpreted as having any "independent substantive effect." *See* Record, Vol. VI, Docket Entry No. 81, Exhibit 12, USI's Supplementary Evidentiary Submission at 2–4, 6–8 (filed June 27, 1983). The court below approved the Stipulation but left its "legal significance" for later determination. *Id.*

### D

In the winter of 1980, yet another litigation front was opened, this time in Superior Court as further fallout from the Subcontract case. After the District Court's initial dismissal of the Intercounty and Powers claims (asserted on their behalf by USI) from the Subcontract case (and while USI was pursuing its appeal from that dismissal in this court), Intercounty and Powers instituted separate actions in the District of Columbia Superior Court asserting their

---

inasmuch as these claims were raised in the complaint and never dismissed from the case. The presence of these attorneys' fees claims provided USI with an opportunity to litigate all attorneys' fees claims, including the attorneys' fees associated with the Bonding Fee case inasmuch as this claim was never made in the Bonding Fee case and therefore not dismissed "with prejudice" by the Final Consent Judgment. USI "chose not to exploit" the opportunity and is now bound by that choice. *See Page v. U.S.,* 729 F.2d 818, 820 (D.C.Cir.1984).

**10.** In addition to the exception for costs, both parties reserved their rights in connection with an appeal then pending in the Bonding Fee case.

**11.** The term "Indemnity case," as used in this opinion, refers to the suit brought by USI against Blake to recover under the Contract of Indemnity all attorneys' fees and litigation expenses, incurred in the course of the parties' common litigation, which had not already been recovered.

**12.** The *maximum* effect of that ruling was to revive Count VI, including the attorneys' fees and litigation expenses claims brought in that County under the Contract of Indemnity. This is not to suggest, however, that USI could then have reopened the attorneys' fees issue and, at this late date, conducted a mini-trial on that issue. Had USI made such an attempt, which it did not, Blake might still have been able to defend successfully against those claims based on USI's failure to present evidence regarding its attorneys' fees claims during the six-week jury trial which precluded it from raising those claims at a later date. We do not, of course, decide this issue as it is not presented. We offer it, however, more modestly to emphasize that because USI could have and, in our view, should have litigated its attorneys' fees claims during the Subcontract trial, we need not address the issues raised by the parties' post-trial actions.

claims on their own behalf.[13] In the *Powers* case, Blake was named as defendant along with USI. USI then asserted a cross-claim against Blake for attorneys' fees incurred in connection with that suit. USI filed a motion for partial summary judgment on its cross-claim which Blake, predictably, opposed. As a procedural twist from the *Powers* case, in the *Intercounty* case, USI alone was named as defendant but thereafter brought Blake in by way of a third-party complaint seeking, *inter alia,* recovery under the Contract of Indemnity of attorneys' fees and litigation expenses incurred in connection with that case. Blake moved to sever and dismiss the issue of liability for costs, including attorneys' fees incurred in defending the action, or, in the alternative, for a stay. USI opposed the motion on the ground that it would not promote the "just, speedy and inexpensive determination of [the] action." Superior Court Record, C.A. No. 2232–80, Memorandum of Points and Authorities in Opposition to Third Party Defendant's Motion Sever or Dismiss or for a Stay.

The Superior Court litigation was thus underway when this court issued its opinion reversing the District Court's dismissal of the Intercounty and Powers claims (as well as Count VI) from the Subcontract case. However, before mandate issued and the Stipulation in the Subcontract case was executed, Blake settled and paid the claims asserted in Intercounty and Powers against both USI and Blake. On January 4, 1982, USI and Blake entered into a stipulation in the *Intercounty* Superior Court action stating that all claims by Intercounty against both defendants had been dismissed "thereby leaving the Cross-Claim of Defendant

USI Industries, Inc. ... as the only claim still pending in this action." *See* Superior Court Record, Vol. IV, C.A. No. 2232–80. The parties further stipulated that USI's claim against Blake for attorneys' fees be dismissed without prejudice. Subsequently, on March 5, 1982, Blake and USI executed a stipulation in the *Powers* case staying further proceedings until the present Indemnity case could be adjudicated.

Intercounty and Powers were not the only third parties to enter the seemingly endless Blake-USI web of litigation. In 1979, Johns-Manville filed suit under the Miller Act, 40 U.S.C. §§ 270a *et seq.* (1982), against both USI and Blake. USI subsequently asserted a cross-claim against Blake under the Contract of Indemnity for attorneys' fees and litigation expenses arising out of the Johns-Manville case. When the case was settled by the parties in October 1980, USI specifically excepted its claim for attorneys' fees and litigation expenses from the Final Settlement Agreement and Order. The attorneys' fees claim was then dismissed without prejudice, with the specific understanding that it would subsequently be litigated in the then-pending Indemnity case.[14] The Johns-Manville attorneys' fees claim thus awaited resolution along with the rest of the Indemnity case.

### E

Shortly after this court issued its mandate in the Subcontract appeal and the parties entered into the Stipulation of Dismissal in the Subcontract case in March 1982, the Indemnity case resumed.[15] Cross-mo-

---

**13.** *See Intercounty Constr. Corp. v. U.S. Indus., Inc.,* C.A. No. 2232–80 (D.C.Sup.Ct.) (filed February 14, 1980); *MCC Powers v. Blake Constr. Co. et al.,* C.A. No. 3137–80 (D.C.Sup.Ct.) (filed March 5, 1980).

**14.** *See* Record, Vol. IV, Docket Entry No. 49, Exhibit 14, ¶ 5, USI's Combined Evidentiary Submission 3–4 (filed May 14, 1982).

**15.** Shortly after the Stipulation was executed and prior to the District Court's approval of it, USI discovered that the statute governing the interest rate applicable to the judgment in the

Subcontract case had been amended prior to Blake's satisfaction of that judgment. The effect of the amendment was to increase the applicable post-judgment interest rate. Thus, on April 14, 1982, USI sought to amend the Stipulation to recover an additional $43,000 in post-judgment interest. The motion was denied on the ground that USI should have raised the issue at the April 6, 1982 status conference at which time the District Court approved the Stipulation. USI appealed to this court which affirmed the District Court's ruling by unpublished order.

tions for summary judgment were filed for the second time in May 1982. *See supra* p. 9. The District Court then stayed proceedings in the Indemnity case until the effect of the Stipulation of Dismissal in the Subcontract case could be determined. To no avail, USI challenged the stay in this court seeking a writ of mandamus to compel the District Court to lift the stay; USI's mandamus petition was denied in July 1982. After several extensions of time, the parties ultimately filed briefs addressing the Stipulation of Dismissal.

In its July 1982 Order in the Indemnity case, which is the judgment now under review, the District Court dismissed USI's indemnity claims for litigation expenses incurred in the Bonding Fee, Subcontract, Intercounty and Powers cases on the ground that all of USI's indemnity claims— save for the claim asserted in the Johns-Manville litigation—were barred by either *res judicata* or the March 1982 Stipulation in the Subcontract case. The Johns-Manville case, the court observed, was the only case in which USI specifically reserved its claim for attorneys' fees and litigation expenses under the Contract of Indemnity for later consideration in the Indemnity action.[16]

In holding the lion's share of USI's claims in the Indemnity action to be barred under principles of *res judicata*, the District Court examined a variety of elements. The District Judge first took into account the similarity between the complaints filed in the Subcontract case and the Indemnity action. The court considered USI's failure to come forward with any proof in the Subcontract case as to the attorneys' fees claims asserted in the complaint. The court also observed that the claim for fees

was based on the Contract of Indemnity and "thus was an integral part of USI's causes of action for damages under its contracts." Order at 17, USI Record Excerpts at 37. The District Judge observed that USI not only had an opportunity to present evidence on all its attorneys' fees claims in the first instance but also had an additional opportunity to perfect its attorneys' fees claims after USI had become aware of the possibility that the Subcontract case might have *res judicata* effects as to the Indemnity action. Order at 10, USI Record Excerpts at 40. At the time of this court's remand in the Subcontract case, Blake had already raised the *res judicata* issue in its answer to USI's Indemnity complaint. *Id.* The District Court concluded, based on these facts, that to allow USI to proceed with the Indemnity action "would be to allow it to 'split' its original cause of action." Order at 8, USI Record Excerpts at 38.

The District Court further concluded that the Indemnity claims were barred because USI had voluntarily entered into a Stipulation with Blake dismissing *all* claims in the Subcontract case. In so doing, the court found that included "in" the Subcontract case were the claims for attorneys' fees related to the Intercounty and Powers cases.[17] The latter conclusion was based upon this court's remand in the Subcontract case which reinstated the Intercounty and Powers claims and provided USI with an opportunity to preserve those issues by removing them from the reach of the Stipulation executed in the Subcontract case. Order at 9, USI Record Excerpts at 39. The District Court further held that the Stipulation of Dismissal was a dismissal with prejudice because it "was intended by

---

*U.S. Indus. v. Blake Constr. Co.*, 706 F.2d 1230 (D.C.Cir.1983). *See* USI Brief at 15 n. 14.

**16.** The Johns-Manville attorneys' fees claim went to trial on November 3, 1983. In a November 28, 1983 opinion and judgment in the Indemnity case, the District Court awarded USI $39,622.02 in attorneys' fees and litigation expenses incurred in connection with the Johns-Manville case. That award has not been challenged by Blake.

**17.** Because the claim for attorneys' fees incurred in the Bonding Fee case was sufficiently related to the claims "in" the Subcontract case at the time the parties entered into the Stipulation, the District Court found that this claim was barred by the *res judicata* principle of merger which operates to preclude a prevailing plaintiff from later asserting claims that should have been raised in the proceeding. Order at 13, USI Record Excerpts at 43.

the parties and accepted by the Court to be with prejudice." Order at 10, USI Record Excerpts at 40. The court pointed to the fact that the parties had not reserved any issues other than the issue of costs already awarded in the Subcontract case and the additional fact that the court had made it clear, prior to the remand in the Subcontract case, that it would not proceed with the Indemnity action "until all the matters at issue in [the Subcontract case] had been resolved with finality." Order at 11, USI Record Excerpts at 41.

## II

USI's principal contention in the present appeal is that the District Court erred in barring, on grounds of *res judicata*, its global indemnity action. Specifically, USI advances the proposition that attorneys' fees claims, such as those urged here, should be brought in a separate, later suit from the claim on the merits. USI further argues that, under the pragmatic approach to *res judicata* principles endorsed by the *Restatement (Second) of Judgments*, the doctrine should not be applied here because USI's bringing all its claims under the Contract of Indemnity in a single, global action promotes the interests of judicial economy, an important policy foundation undergirding *res judicata* principles. Finally, USI argues that its conduct was reasonable in light of various actions taken by the District Court.

## A

In its first line of argument, USI draws by analogy upon a line of cases involving the timing for asserting claims for entitlement to attorneys' fees. The authorities chiefly relied upon by USI are instances in which a statute expressly authorizes an award of attorneys' fees. In such situations, the courts typically have held that,

inasmuch as claims for attorneys' fees brought pursuant to a statutory authorization are dependent upon the outcome of the case on the merits, those claims cannot appropriately be asserted concurrently with the merits claims; instead, they must follow in the wake of the determination of the primary or substantive claims. *See, e.g., White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). Reasoning from these cases, USI urges that an express contractual right to recover attorneys' fees is analogous to the statutory attorneys' fees case.

We find the analogy, upon analysis, inapt. The rationale for *White* and its progeny is quite sensible—inasmuch as statutes providing for attorneys' fees typically if not always require the party seeking to recover such fees to have prevailed on the merits,[18] the action for attorneys' fees necessarily must be brought as a separate, later action. In such instances, the attorneys' fees claim is derived from and spawned by the antecedent claim on the merits. The analogy which USI would draw thus obtains in the present circumstances only if a prevailing-party requirement is imposed by the Contract of Indemnity.

USI asserts in this respect that "where (as in the Indemnity case), only a prevailing party is entitled to attorney's fees," the claim for attorneys' fees should be brought in a separate action. USI Brief at 30. We have searched high and low but entirely in vain for a provision in the Contract of Indemnity requiring USI to prevail on the merits before it was entitled to assert and recover attorneys' fees. To the contrary, the Contract of Indemnity is so sweeping that such a requirement, nowhere to be found in the contract's express terms, cannot fairly be implied from its provisions.

---

18. *See, e.g.,* Civil Rights Attorneys' Fees Awards Act of 1976, amending 42 U.S.C. § 1988 (1982); Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1982); Voting Rights Act, 42 U.S.C. § 1973e (1982); Fair Housing Act of 1968, 42 U.S.C. § 3612(c) (1982); Education Amendments Act of 1972, 20 U.S.C. § 1617 (1982); Equal Employment Opportunity Act, 42 U.S.C. § 2000e-5(k) (1982); Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) (1982); Federal Social Security Act, 42 U.S.C. § 406(b)(1) (1982); Clayton Act, 15 U.S.C. § 26 (1982); Truth-in-Lending Act, 15 U.S.C. § 1640(a) (1982).

The indemnity agreement, as we have seen, allows USI to recover from Blake under its provisions for *any* loss arising out of the project in *any* action or proceeding or pursuant to *any* judgment. The breadth of the contract suggests that USI bargained for and got a virtually unimpeded path to the courthouse on any claim it might have under the Contract of Indemnity.[19] Indeed, this court expressly determined at an early stage of the USI-Blake litigation that USI need not obtain a judgment against Blake before bringing a claim under the Contract of Indemnity. *See U.S. Indus., Inc. v. Blake Constr. Co., supra,* 671 F.2d at 552.

In addition to the contractual terms themselves, USI's latter-day inference of a prevailing-party requirement is belied by USI's own prior actions. USI's argument is, at the least, curious in light of its studied attempt to include in every action—save one—a claim for the attorneys' fees incurred in litigating that action. As we have seen, in the course of this outpouring of litigation, USI sought to recover attorneys' fees incurred in the Subcontract case, the Intercounty and Powers cases as well as the Indemnity case simultaneously with its assertion of claims on the merits in each of those actions. Only in the Bonding Fee case did USI forbear in asserting a claim

for attorneys' fees until it had prevailed on the merits.

## B

In addition to its first argument, USI maintains that principles of *res judicata* cannot bar the Indemnity action because USI did not split a single cause of action. The *res judicata* principle of merger prohibits a party from raising, in separate suits, the several portions of a single cause of action; the subsequent actions are deemed to be merged into the initial action because, in the interests of judicial economy and the orderly administration of justice, these matters should have been presented together. USI contends that its claims for attorneys' fees constitute a separate cause of action because they arose at a different time than the substantive claims in the Subcontract case and that different facts from those needed to establish the substantive claims are needed to prove the attorneys' fees claims. We are thus called upon by this argument to examine whether, based upon the complaints in the Subcontract and Indemnity actions and accepted principles of claim preclusion, *res judicata* bars the later Indemnity action.[20]

As this court observed in *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg.,* 723

**19.** Presumably, USI's right of action would be limited by an implied-in-law covenant of good faith so as to prevent recovery for expenses incurred in vexatious litigation brought for purposes of harassment. *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 (1979); *see also Voege v. Am. Sumatra Tobacco Corp.,* 241 F.Supp. 369, 375 (D.Del.1965); *Mutual Life Ins. Co. v. Tailored Women,* 128 N.E.2d 401, 309 N.Y. 248 (1955).

**20.** The question whether state or federal law governs with respect to *res judicata* determinations appears not to have been entirely settled. According to respected commentators, federal law should be applied when both the prior proceeding and the proceeding challenged on *res judicata* grounds were brought in federal court even if those actions were, as here, founded upon diversity jurisdiction. *See* C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4472, at 733 (1982); 1B J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.140[1] (1983). The reasoning behind this approach was captured succinctly in the following passage:

> Many preclusion rules are closely entwined with rules of procedure, and the civil rules

often are clearly intended to require preclusion. Even apart from the civil rules, the purpose of diversity jurisdiction to afford a good tribunal and a good judgment suggests that federal courts should be able to control many *res judicata* consequences of their judgments.

C. WRIGHT, A. MILLER & E. COOPER, *supra,* § 4472, at 733 (1982).

There is no need, however, to resolve the question in this case. District of Columbia law governs the indemnity contract inasmuch as the contract was both entered into and performed in the District of Columbia, *see, e.g., Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.,* 465 F.Supp. 790 (S.D.N.Y.1978), and we can discern no material differences in the District of Columbia's law of *res judicata* and the federal common law of *res judicata. Compare Goldkind v. Snider Bros., Inc.,* 467 A.2d 468 (D.C. 1983) *and Henderson v. Snider Bros., Inc.,* 409 A.2d 1083 (D.C.1979) *with* cases cited in text *infra.*

F.2d 944, 947 (D.C.Cir.1983), "[the a]uthorities do not provide a uniform definition for the term 'cause of action' in connection with the application of *res judicata.* The term has been given varied treatment depending largely on the facts in each case." In *Industrial Gear,* this court embraced the *Restatement (Second) of Judgments'* pragmatic, transactional approach to determining what constitutes a cause of action. 723 F.2d at 949 n. 5. In addressing the cause-of-action question, the *Restatement* speaks in terms of a transaction or series of transactions and gives "weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." RESTATEMENT (SECOND) OF JUDGMENTS § 23(2) (1982). The *Restatement* approach reflects a trend "in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence." 1B J. MOORE, MOORE'S FEDERAL PRACTICE

¶ 0.410[1], at 359 (1983) (citing, for example, *Export Elec., Inc. v. Levine,* 554 F.2d 1227 (2d Cir.1977) ).[21]

Mindful of the *Restatement*'s approach to claim preclusion, we turn now to analyze the District Court's disposition of this case. As we have seen, the District Court—true to the pragmatic approach embraced by the *Restatement* and endorsed by this court—first compared the nature of the parties and claims in the Subcontract and Indemnity cases. In the Indemnity case, USI named Blake and the Benders as defendants. In the Subcontract case, USI named not only Blake as a defendant in the initial complaint, but also the Benders as co-signers with Blake of the Contract of Indemnity. In thus attempting to assert in the Subcontract case a claim against the Benders under the Contract of Indemnity, USI created an even closer parallel between the two cases than that already existing due to the similarity in the sets of facts as alleged in the two complaints. *See* Record, Vol. V, Docket Entry No. 50, Appendix to Blake's Motion for Summary Judgment. Tracking

---

**21.** Of course, nothing in the rule against splitting a cause of action prevents a plaintiff from later bringing claims that either could not have been anticipated when the first suit was filed or would have been utterly impracticable to join at that time. We observe in this respect that the narrow question whether, in an indemnification setting, an action to recover attorneys' fees constitutes a separate cause of action from the suit in which the attorneys' fees were incurred has apparently arisen in the several circuits only once before. In *Fox v. Connecticut Fire Ins. Co.,* 380 F.2d 360 (10th Cir.1967), the Court of Appeals held that a judgment in an earlier action by an insured against its insurer to recover under an insurance policy barred a subsequent action by the insured to recover for the cost of litigating the first suit. In applying *res judicata* principles to bar the second action, the court listed what it deemed to be the relevant factors: "a final judgment on the merits in a prior case; the parties in both cases are identical; the two cases involve the same subject matter; the same contract is the basis of plaintiff's claim in each case." *Id.* at 361. While, as USI argues, this court in *Industrial Gear, supra,* implicitly recognized that a single contract *may* give rise to two separate causes of action (in that case, one for inaccurate payments and one for delinquent payments and reports), *see* USI Brief at 35, this is not at odds with the approach in *Fox.* The fact that two claims arise under the same contract is only one of the factors to be considered; standing alone, of course, it will not always be sufficient to establish a single cause of action.

In *Fox,* to be sure, the court was presented with a simple, straightforward action by an insured against its insurer seeking indemnity under its insurance contract. While the present case is procedurally complex, at least when viewed in the context of the rich history of the entire panoply of Blake-USI litigation, the relevant portions of the cases, which Blake maintains constitute a single cause of action, are actually similarly simple and straightforward. The Indemnity case before this court presents *res judicata* issues by virtue of the inclusion in the Subcontract complaint of Counts IV and VI as well as the repeated request—appearing through the Subcontract complaint—for attorneys' fees incurred in the Subcontract case. These claims as well as the claims asserted in the Indemnity case involve, as did *Fox,* simple claims by an indemnitee against its indemnitor under an indemnity contract. *Cf. United States Lines v. Maritime Ship Cleaning & Maintenance Co., Inc.,* 235 F.Supp. 259, 260 (E.D.Pa.1964) (failure to demand attorneys' fees pursuant to a claim for indemnification did not entitle plaintiff to recoup in second action what it should have sought in first suit).

the language of § 24(2) of the *Restatement*, the District Court observed that the "damage and attorneys' fees claims form a convenient trial unit, overlap somewhat in time, are related in origin and[,] as USI recognized when it drafted the complaint[,] should be treated as a unit according to its expectations which were never contested by Blake." Order at 8 n. 1, USI Record Excerpts at 38.

Thus, the District Court was faced in the Indemnity case with a series of identities between the Indemnity and Subcontract cases: an identity of parties, an identity of subject matter (breach of contract in various respects, all in connection with construction of the new Walter Reed Hospital) and an identity of contract (claims under the Contract of Indemnity comprised at least part of both cases). All that remained for the District Court to determine was whether there had been a final adjudication on the merits in the Subcontract case. *See, e.g., Fox, supra* note 21, 380 F.2d at 360.

USI argues in this respect that the merits of its claim for attorneys' fees have never been addressed. It is, however, unnecessary under *res judicata* principles for USI actually to have been heard on its attorneys' fees claims for there to have been a final adjudication on the merits. The critical point is, rather, whether USI in fact enjoyed an opportunity to adduce evidence on each of these claims in the Subcontract proceeding. *See Page, supra,* 729 F.2d at 820. It is manifest that USI had an opportunity to present evidence with respect to these claims during the six-week jury trial; it did not do so, but instead made a unilateral decision not to pursue the attorneys' fees claims in the Subcontract case. By USI's own admission, it "pled a claim under the Contract of Indemnity for attorneys' fees and other litigation expenses to be incurred in prosecuting the Subcontract case *but did not pursue that claim at trial.*" USI Brief (filed in the Subcontract case appeal involving the binding effect of the Stipulation of Dismissal) at 10, contained in Records & Briefs, United States Court of Appeals, D.C., Vol. 3701 (emphasis added).

In the face of this failure at trial, USI urges before us that the claims in the Subcontract and Indemnity cases were nevertheless quite different and independent of each other. In USI's view, "most of the facts needed to prove the two separate types of claim are different;" the claims "arose under separate contracts with different signatories." USI Brief at 27.

We are unpersuaded by USI's attempt, in effect, to Balkanize the cases into separate and distinct causes of action. As we have already seen, the complaint in the Subcontract case asserted not only a claim against Blake under the subcontract provision of the Joint Venture Agreement, but also claims on behalf of two of USI's subcontractors and a claim against Blake and the Messrs. Bender under the Contract of Indemnity. The Subcontract case was, unlike its predecessor (the Bonding Fee case), in effect a global action. Indeed, the Bonding Fee case was a mere opening skirmish—a straightforward case for USI involving little by way of evidence to establish its right to recover.

Not so with the Subcontract case. This latter case represented an attempt on USI's part to assert against Blake each and every claim it had, save of course for the Bonding Fee claim filed nine months previously. The complexity of the Subcontract case, by virtue of multiple parties and issues, is conceded, indeed stressed, by USI in this appeal. *See, e.g.,* USI Brief at 23–24. In asserting the purported lack of similarity between the Subcontract and Indemnity cases, however, USI conveniently ignores one pivotal point—the facts it chose to assert as relevant in each of the two complaints are nearly identical. *See supra* p. 19. And, as we have previously emphasized, there is an identity of parties, contracts and subject matter. USI elects to ignore this identity, taking instead an unjustifiably narrow view of what the Subcontract case truly encompassed. The

wording of USI's own Subcontract complaint belies its more recent myopia.[22]

## C

The District Court could properly have concluded its analysis once the court determined that the "technical elements" of *res judicata* were present. *See Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). In *Moitie,* the Supreme Court held that once it was determined that the technical elements of *res judicata* were satisfied, the subsequent suit was barred—and nothing further by way of analysis or mitigating circumstances, or equity, was required. *Id.* at 399–400, 101 S.Ct. at 2428. Observing that the Ninth Circuit in *Moitie* "rested its opinion in part on what it viewed as 'simple justice,'" the Supreme Court held that no grave injustice is "done by the application of accepted principles of res judicata." *Id.* at 401, 101 S.Ct. at 2429. The Court went on to observe that "'[s]imple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case." *Id.*

Nevertheless, the District Court addressed USI's equitable claim, finding that the equities did not favor USI. We agree. USI chose to assert its right to recover attorneys' fees under the Contract of Indemnity in Counts IV and VI of the complaint in the Subcontract case. Count IV expressly requested recovery of attorneys' fees incurred in connection not only with the Subcontract case but also any pending

---

**22.** We have stressed the all-encompassing nature of USI's prayer for relief under the Contract of Indemnity. In Count VI of the Subcontract complaint, USI makes a general prayer for relief under the Contract of Indemnity, including within that prayer reasonable attorneys' fees and litigation expenses. The prayer is not limited to expenses incurred in any particular suit. In addition, in Count IV, USI requests attorneys' fees and litigation expenses incurred in connection with any "actual or threatened" claim by USI's "own lower-tiered subcontractors." This prayer certainly encompasses the Intercounty and Powers claims initially included in the Subcontract case *as well as* the suits subsequently brought by these subcontractors in Superior Court. Moreover, as noted, each and every count in the Subcontract complaint requested attorneys' fees incurred in connection with that case in which approximately 90% of the fees at issue in this appeal were incurred. Furthermore, while the Bonding Fee case is not specifically mentioned in the Subcontract complaint, the litigation expenses and attorneys' fees incurred that action, at the very least, *should have been* raised in the Subcontract case. Although the Bonding Fee case was still extant when the Subcontract complaint was filed, a portion of the attorneys' fees associated with the Bonding Fee case had presumably been incurred at that time. The fact that USI would incur additional attorneys' fees in the Bonding Fee case should not have inhibited USI from asserting its claim in the Subcontract complaint. The fact that this claim would necessarily have been unspecified in amount could not have deterred USI inasmuch as it sought, in every count in the Subcontract complaint, to recover attorneys' fees incurred in the Subcontract case. Obviously, the exact dollar amount of attorneys' fees yet to be incurred in the Subcontract case could not be determined at the earliest of stages in that case. In addition to being properly assertable in their own right, litigation expenses and attorneys' fees associated with the Bonding Fee case are, in our view, encompassed within the broad language of Count VI. That count requested attorneys' fees incurred "in connection with, *inter alia,* the prime contract or the Project." The prayer for litigation expenses arising out of the Bonding Fee case was quite naturally not reinforced in a separate count inasmuch as the Bonding Fee issue was already being litigated in a separate suit and was, therefore, not part of the *substantive* claims in the Subcontract case.

Thus, USI not only could have and should have raised all its claims for attorneys' fees and litigation expenses in the Subcontract case, as the District Court held, but, we note, it appears USI did in fact raise all such claims. We need not, however, find that the Subcontract complaint did *in fact* raise a claim for attorneys' fees incurred in connection with not only the Subcontract case, but also the Bonding Fee, Intercounty and Powers cases. For purposes of the *res judicata* principle of merger, it is sufficient that those claims clearly could have been and indeed should have been raised at that juncture. Nevertheless we believe that between Count IV and Count VI and the repeated request for attorneys' fees incurred in the Subcontract case, a claim for attorneys' fees was made with respect to each of these cases. Indeed, the Indemnity case appears in retrospect to heave been nothing more than USI's attempt to preserve Count VI (and all other claims for attorneys' fees) in the event that it lost its appeal from the order dismissing Count VI.

or threatened action against USI brought by its subcontractors. USI thus clearly recognized the propriety of asserting claims for attorneys' fees in the Subcontract case even if the amount of fees could not be determined (at least entirely) at the time of filing and even though those fees had not been incurred in connection with the Subcontract case. The Subcontract case, which generated approximately ninety percent of the attorneys' fees at issue in this appeal, was at its earliest stage—the filing of the complaint—and yet USI sought to recover whatever the dollar value of its attorneys' services was determined, at a later date, to be. In addition, USI sought to recover attorneys' fees incurred in connection with a separate matter, the 1975 Intercounty suit. Finally, USI requested in Count IV attorneys' fees in connection with any litigation involving its lower-tiered subcontractors that was threatened against it at the time the Subcontract case was filed. Nevertheless, for reasons that remain enshrouded in mystery, USI specifically asserted some of its claims for attorneys' fees while generally asserting any and all others in the Subcontract action, only then utterly to fail to adduce any evidence even with respect to those claims for attorneys' fees which it had specifically asserted. The sole excuse advanced by USI—that it was *unilaterally* seeking to narrow the issues by virtue of the District Judge's pretrial directive—is singularly unpersuasive, particularly when in other litigation (*Johns-Manville*) USI

specifically preserved attorneys' fees claims for later resolution.

In its effort to cabin the scope of the Subcontract case, USI argues that attorneys' fees incurred in the Bonding Fee case could not properly have been claimed in the Subcontract case because those cases were judicially determined to be unrelated. *See* USI Brief at 43. This is true in a narrow sense and yet untrue in another, more substantive sense. The determination by Judge Smith, in his capacity as Chairman of the Calendar Committee, that the Subcontract case was unrelated to the Bonding Fee case was, as we have seen, *see supra* note 5, not an adjudication at all but rather a routine housekeeping matter.

USI further contends that because the District Judge refused to permit USI to refer to the Bonding Fee case during the trial of the Subcontract case, USI was thus precluded from offering evidence with respect to any aspect of the Bonding Fee controversy. This argument likewise fails. It is apparent from the June 7, 1982, hearing transcript in the Indemnity case that the District Judge was referring to the merits of USI's substantive claim in the Bonding Fee case and was thus attempting to prevent USI from burdening and confusing the jury with extraneous matters.[23] We have no indication that the District Court ruled or even intimated that evidence regarding *attorneys' fees* incurred in the Bonding Fee case could not be presented as part of USI's claim for attorneys' fees set forth in Counts IV and VI of the Subcontract complaint.[24]

---

**23.** The District Judge explained in a June 1982 hearing in the Indemnity case that it was his understanding when he refused to allow USI's counsel to refer to the Bonding Fee case during the jury trial in the Subcontract case that USI's counsel should not be allowed to "make argument to the jury with the one percent [bonding fee] and how horrible Blake was and all they were doing." Transcript 26–27, Record Vol. VI, Docket Entry No. 81, Exhibit 13 to USI's Supplementary Evidentiary Submission. The District Judge further explained that his concern with respect to USI's counsel's reference to the Bonding Fee case stemmed from the fact that USI had no right "to keep arguing Blake's misconduct which was obvious, with respect to the one percent." *Id.* USI should not be allowed, the

District Judge observed, "to try it in both courts." *Id.* Obviously, the District Judge was not concerned that USI not be allowed to adduce evidence with respect to attorneys' fees incurred in the Bonding Fee case inasmuch as it is undisputed that this issue was not part of the Bonding Fee case.

**24.** No part of Count IV or Count VI was dismissed from the Subcontract case until the close of the evidence in the case. Furthermore, as we have seen, each and every count of the complaint sought attorneys' fees incurred in connection with the Subcontract case. Thus, the claim for attorneys' fees incurred in the Bonding Fee case could have been, along with these remain-

USI also argues that the District Court's dismissal of the Intercounty and Powers claims from the Subcontract case effected a blanket dismissal and, in consequence, attorneys' fees incurred in connection with those claims could no longer be advanced in the Subcontract action. We disagree. After reviewing with care the voluminous set of records in this case, we are left with the clear conviction that USI consistently treated the Subcontract case as a global action, even pursuing vigorously on appeal its right to include in the Subcontract case the Intercounty, Powers and Contract of Indemnity claims. We cannot, upon review, find error in the District Court's treatment of the Subcontract action as *the single vehicle* (save, again, for the Bonding Fee case) in which USI sought to recoup its losses from Blake.[25]

It should not pass unnoticed in this respect that the District Court expressly observed that USI had a fair opportunity to perfect its claims for attorneys' fees and litigation expenses after becoming aware of the possibility that its failure to do so at that time might result in a *res judicata* bar.[26] Specifically, when the Subcontract case went back to the trial court on remand from this court, Blake had already expressly advanced—in the Indemnity case—the contention that some, if not all, of the claims in the Subcontract case were *res judicata* as to the Indemnity case.[27] Blake's actions, at a minimum, sent a clear signal to USI that the Subcontract case might well be determined to have a preclusive effect on the Indemnity case. Instead of taking advantage of this court's remand in the Subcontract case at least to attempt to preserve the attorneys' fees claims prior to entry of final judgment, USI chose stubbornly to adhere to its litigation strategy.

Having elected to do so, USI is bound by the consequences of that choice.

Finally, USI seeks to rely upon the District Judge's postponement of all proceedings in the Indemnity case (until such time as the Subcontract case appeal was resolved) as indicating that the claims in the Indemnity case would still be cognizable after the Subcontract case concluded. USI interprets the postponement of the Indemnity case as follows: "Paradoxically . . . the District Court itself . . . recognized the separate nature of the two USI claims when it deferred proceedings in the Indemnity Case until the 'rights of the parties' were determined by this Court in the then pending appeal in the Subcontract Case." USI Brief at 34 (quoting the District Court). This will not wash. The deferral in the Indemnity case by no means precluded USI from advancing its indemnity claims in the Subcontract case; to the contrary, if anything, the postponement of the Indemnity case encouraged USI to do precisely that by indicating that the Indemnity case might be resolved through adjudication of the Subcontract case.

### III

Both the judiciary and the parties in proceedings before the courts have a strong interest in the orderly process of litigation and in the finality of judgments. The doctrine of *res judicata* encourages a plaintiff to mount in a single action its claims against the party which it has haled into court. In our system, it is the province of the courts, not a single party acting unilaterally, to determine whether issues present in a case might better be separated out for later trial. *See* FED.R.CIV.P. 42(b). A party who makes a unilateral, unauthorized determination not to go forward on issues

---

ing claims (as it was clearly related to them), reserved out for litigation in a separate suit.

**25.** Initially, the Johns-Manville claim was included in the Subcontract case but was, like the Intercounty and Powers cases, dismissed out by the District Court. USI did not appeal the dismissal of this case. *See* Blake Brief at 6.

**26.** *But see supra* note 12 and accompanying text.

**27.** At the time the District Judge deferred the Indemnity case, the parties had already filed, in December 1980, cross-motions for summary judgment which raised the issue of *res judicata*. Those motions were dismissed, without prejudice, as premature. Furthermore, the issue was raised by Blake in its answer to USI's complaint in the Indemnity case.

**210**

that were properly in the case does so at its own peril.

Having concluded that the elements of *res judicata* are fully satisfied here, we agree with the District Court's holding that the Indemnity case is barred. For the foregoing reasons, the District Court's judgment is

*Affirmed.*