KAREN LeCRAFT HENDERSON, Circuit Judge,
concurring:
This case comes before us after a long and tortuous procedural history well described by Judge Edwards. Because I concur on the merits, I join his opinion; nonetheless, I write separately to express my concern over the byzantine process created by Congress and the parties — a process that, after 3 separate lawsuits and 18 years of fighting, can do no more than send the Government and Mr. Nixon on to yet another phase of their dispute to face still more “difficult questions regarding the measure of damages.” Maj. Op. at 1287. The dispute between Mr. Nixon and the Government over these presidential papers may well take over 20 years to resolve.
Faced with this overwhelming procedural history, the Court asked the parties why res judicata, or claim preclusion, does not bar this third lawsuit Mr. Nixon is litigating against the Government. Because the parties met our inquiry by submitting additional briefs on the issue, I feel it is incumbent upon us to address the question directly and fully.
Res judicata, or claim preclusion, is an affirmative defense designed in part to protect a defendant from repetitive, vexatious litigation. Ordinarily a defendant’s failure to raise it at the pleadings stage results in a waiver of the defense. See Fed.R.Civ.P. 8(c) (listing res judicata as an affirmative defense); 12(b), 15 (indicating that defenses not asserted in the answer or amendments thereto are waived). Because the res judicata defense also rests on the need to conserve judicial resources, however, some trial courts have indicated a willingness to raise the issue sua sponte and these decisions have been sustained. See, e.g., Holloway Constr. Co. v. U.S. Dep’t of Labor, 891 F.2d 1211, 1212 (6th Cir.1989) (affirming sua sponte application by district court); McClain v. Apodaca, 793 F.2d 1031, 1033 (9th Cir.1986) (affirming sua sponte application by bankruptcy court); Gullo v. Veterans Coop. Housing Ass’n, 269 F.2d 517 (D.C.Cir.1959) (affirming sua sponte application by district court).
The circuits are split on the question whether an appellate court may, for the first time, raise the issue sua sponte. The Fifth and Sixth Circuits and the Court of Claims have held that an appellate court may consider the issue on its own initiative. See American Furniture Co. v. International Accommodations Supply, 721 F.2d 478, 482 (5th Cir. Unit A March, 1981); Lesher v. Lavrich, 784 F.2d 193, 195-96 (6th Cir.1986); Alyeska Pipeline Serv. Co. v. United States, 231 Ct.Cl. 540, 688 F.2d 765, 771 (1982). The First, Third, Fourth, Seventh and Ninth Circuits have declined to exercise such authority under the circumstances presented to them. See Badway v. United States, 367 F.2d 22, 25 (1st Cir.1966); Kane v. Heckler, 776 F.2d 1130, 1132 (3d Cir.1985); Crowe v. Cherokee Wonderland, Inc., 379 F.2d 51, 54 (4th Cir.1967); Marcus v. Sullivan, 926 F.2d 604, 615-16 (7th Cir.1991); Kern Oil & Ref. Co. v. Tenneco Oil Co., 840 F.2d 730, 735 (9th Cir.1988).
Despite Mr. Nixon’s contentions to the contrary, this circuit has not addressed the question directly. Mr. Nixon asserts that we laid down a strict rule that res judicata must be affirmatively raised in Poulin v. Bowen, 817 F.2d 865, 869 (D.C.Cir.1987). But in that case, we did no more than state that parties waive their own right to raise res judicata by failing to plead it.[1] Id. Thus, the question whether this court may raise res judicata sua sponte in appropriate circumstances is, at least in my opinion, an open one.
*1298 Despite the long pedigree of this case and despite the fact that any attempt to set compensation for Mr. Nixon may consume judicial resources for several more years, application of res judicata here would be fundamentally unfair. To apply res judicata, the litigants or their privies must have had a full and fair opportunity to raise the claim in an earlier proceeding. North v. Walsh, 881 F.2d 1088, 1095 (D.C.Cir.1989); Clark-Cowlitz Joint Operating Agency v. F.E.R.C, 826 F.2d 1074, 1079 (D.C.Cir.1987). Moreover, the challenged claim must flow from the same claim or cause of action as the claim presented in the earlier proceeding. The definition of a common “cause of action” is imprecise and varies with the facts presented, and this Court has adopted a transactional approach to the issue. See I.A.M. Nat’l Pension Fund, Benefit Plan A v. Industrial Gear Mfg. Co., 723 F.2d 944, 947 (D.C.Cir.1983); U.S. Indus., Inc. v. Blake Constr. Co., 765 F.2d 195, 205 (D.C.Cir.1985). Considerations such as whether the facts giving rise to the former proceeding and the current claim are related in time, space, origin or motivation, whether the claims form a convenient trial unit and whether the parties expected the claims to be treated as a unit are all relevant to the determination whether the claims arise out of the same general cause of action. U.S. Indus., 765 F.2d at 205.
Here, these considerations are absent. Mr. Nixon’s first litigation did not provide him with a full and fair opportunity to litigate the takings claim. In an order dated May 1, 1975, the district court limited itself to a consideration of the propriety of injunctive relief against the alleged facial unconstitutionality of the PRMPA. Nixon v. Administrator of Gen. Servs., 408 F.Supp. 321, 335 (D.D.C.1976). On review, the Supreme Court indicated that the takings issue remained unresolved. Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 445 n. 8, 97 S.Ct. 2777, 2791 n. 8, 53 L.Ed.2d 867 (1977). Significantly, during the entire course of litigation, the Government also adopted the position that Mr. Nixon’s takings claim should be addressed in a separate compensation action under PRMPA. See Supreme Court Br. for Fed. Appellees at 45, Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); P. & A. in Supp. of Def’s Mot. to Dismiss 8, 10 (filed Aug. 15, 1977), Nixon v. Sampson, 389 F.Supp. 107 (D.D.C.1975), dismissed, 437 F.Supp. 654 (D.D.C.1977). Having consistently adopted that stance to the present, the Government may not now rely on Nixon v. Administrator of Gen. Servs. as a basis for res judicata. Thus, Mr. Nixon had no full and fair opportunity to litigate the takings issue in his first lawsuit.
It is equally inappropriate to apply res judicata based on Nixon v. Freeman, 670 F.2d 346 (D.C.Cir.1982), in which Mr. Nixon challenged the PRMPA regulations. First, it is not at all clear that Freeman was privy with the United States, the party liable for compensation based on a taking. Second, the record manifests that the parties did not contemplate that the takings issue would be litigated together with the challenge to the regulations. In fact, after Mr. Nixon filed his current complaint, the Government challenged some of the claims based on res judicata. But the government elected not to raise res judicata regarding Mr. Nixon’s takings claim. Answer, United States, March 4, 1981 (J.A. at 23). Finally, because any takings challenge would have required the development of an extensive and unique record tracing presidential practices back to George Washington, it is not clear that this issue would have formed a “convenient trial unit” if it had been brought with the challenge to the regulations. Given the cumulative weight of these considerations, it would be unfair to apply res judicata to Mr. Nixon’s claim on the basis of his second lawsuit.
If the Government had raised res judica-ta when Mr. Nixon first filed this lawsuit, it is possible, although not definite, that the outcome would be different. Taking into account the Government’s failure to assert the defense and the considerations discussed above, however, I feel it would be unfair for us sua sponte to apply res judi-cata to Mr. Nixon’s claim at this time.
*1299 In summary, I believe Judge Edwards rightly addresses the merits of the case and I concur in his persuasive opinion. Although no one is happy about the prospect of additional litigation between Mr. Nixon and the Government, it is necessary to ensure that Mr. Nixon, like all citizens, receives the constitutional protections to which he is entitled. The case requires a remand to the district court to set compensation for the Government’s taking of Mr. Nixon’s presidential papers.

. Likewise, in Taxation with Representation v. Regan, 676 F.2d 715, 717 n. 1 (D.C.Cir. 1982), rev'd on other grounds, 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983), this court, in a footnote, declined to apply res judicata sua sponte. The court did not, however, address the question whether it had the power to apply it. In declining to invoke the power, it apparently accepted the notion that it would be able, in some circumstances, to raise res judicata sua sponte. Id.