**FINARD & COMPANY, INC., Plaintiff,**

v.

**CAPITOL 801
CORPORATION, Defendant.**

**Civ. A. No. 88–3109.**

United States District Court,
District of Columbia.

Oct. 18, 1990.

Jeffrey W. Harab, Harab and Rosenberg, P.C., Washington, D.C., for plaintiff.

Judah Lifschitz, Gerald W. Heller and Randal W. Wax, Laxalt, Washington, Perito & Dubuc, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

I   *Introduction*

This case arises from a contract under which the plaintiff, Finard & Company, Inc. ("Finard"), agreed to procure certain commercial leases for the defendant, Capitol 801 Corporation ("Capitol") in return for additional compensation as set forth below.

Finard at one time owned the rights to purchase a building located at 801 North Capitol Street in Northeast, Washington, D.C. On November 24, 1986, Finard assigned its rights to purchase said building to Capitol for $10,000,000 [1] and at the same time the parties entered into a contract entitled "Assignment Agreement" (the "Agreement") whereby Finard would receive additional compensation (up to one million dollars from Capitol) contingent on its procuring two commercial leases for the building which met certain specific terms and delivering these leases by a specified date.

To secure payment of this additional compensation, the defendant, pursuant to the Agreement, executed a promissory note for $1,000,000 and a deed of trust. The promissory note and deed of trust were to be held in escrow pending physical delivery of the leases.

Finard eventually delivered only one lease to Capitol which did not comply with the terms set forth in the Agreement. Further, this lease was delivered more than one year after the delivery deadline had passed. Finard now sues Capitol seeking a declaration that Finard is entitled to the promissory note. Capitol counter-claimed, asking the Court to declare Finard in breach of the Agreement, and to release Capitol of any obligations under the promissory note. Both parties have moved for summary judgment and the matter has been fully briefed.

We reject all of Finard's arguments that it is still entitled to the million dollar note despite its obvious non-compliance with the Agreement. We therefore deny plaintiff Finard's motion for summary judgment, and grant defendant Capitol's motion for summary judgment on plaintiff's claim and on its counter-claim.

## II *The Agreement and the Delivered Lease*

Article 3 of the Agreement sets forth the terms and conditions of the leases Finard was to procure. At the time the Agreement was signed, floors two to nine of the building were occupied by the government of the District of Columbia. These floors are referred to in the Agreement as the "Government Space." Section 3.1 of the Agreement states that the new lease for the Government Space should be for ten years, and sets forth different methods of calculating an appropriate rent. The other tenant in the building at the time the contract was executed was People's Drugstore, which occupied the basement and first floor of the building, an area referred to as the "Retail Space." Section 3.2 of the Agreement mandates that the new lease for this space should also be for ten years, and sets forth the appropriate payment terms for that lease. Section 3.4 of the Agreement states that rent shall be paid under the lease beginning April 30, 1987 for the Government Space, and March 1, 1987 for the Retail Space, respectively. These dates are specifically referred to as "Rent Effective Dates."

The Agreement provided that if Finard was able to deliver these leases to Capitol before June 30, 1987, it was to be compensated for procuring these leases via a $1,000,000 promissory note, secured by a deed of trust, both of which would be held in escrow. Article 5 of the Agreement sets forth different amounts Finard would be paid which vary according to the time when Finard delivered the leases.[2] If Finard failed to deliver the leases by June 30,

---

**1.** This is known in the trade as "flipping a contract." Instead of exercising its option to purchase, plaintiff sold the same to defendant. Defendant acquired title on December 11, 1986.

**2.** If Finard delivered the leases by the closing date of the sale of the building, it would receive the full value of the promissory note. Section 5.1. Capitol acquired title to the building on December 11, 1986. If the lease was delivered after the closing date, but on or before April 1, 1987, then Finard would receive the value of the

promissory note, less a certain deduction, not to exceed $100,000. Section 5.3. If Finard delivered the leases between April 2, 1987 and June 30, 1987, this deduction was increased to a maximum of $150,000. Section 5.4. If Finard delivered the leases after June 30, 1987, Finard would not be entitled to any value from the promissory note, but instead would be forced to pay Capitol $60,000 to offset Capitol's costs in leasing the building. Section 5.5(a).

1987, it had the right to continue negotiating for new leases thereafter, but its only compensation if it delivered a lease after this date would be a refund of the $60,000 it had paid to Capitol. Section 5.5(b).[3] Thus, if Finard delivered a lease after June 30, 1987, all it would receive would be a refund of the money it furnished to Capitol to offset Capitol's leasing costs.

The Agreement explicitly states that the contract requires strict compliance in the following language:

FINARD AGREES THAT IF LEASES MEETING THE APPLICABLE CRITERIA ARE NOT DELIVERED TO CAPITOL CORPORATION AS REQUIRED BY THIS AGREEMENT, THEN FINARD SHALL RECEIVE NO COMPENSATION, CONSIDERATION OR PAYMENT OF ANY KIND UNDER THIS AGREEMENT OTHER THAN THE FOUR (4%) PERCENT COMMISSION WHICH MAY BE EARNED UNDER THE TERMS OF ARTICLE 5 OR ARTICLE 7 HEREOF.

Section 5.5(c).

Section 8 of the Agreement covers the payment of leasing commissions to brokers. In Section 8.2 of the agreement, Finard agreed to bear the cost of any leasing commissions owed to brokers in connection with leases procured under the Agreement. There was only one exception to this provision: Finard would not be responsible for paying the commission if a Government Lease was procured that met certain specific criteria under Article 3 of the Agreement. *See* Section 3.1(b)(i); Section 8.2.

After the Agreement was signed, Finard engaged the services of a real estate broker, Percy A. Brown, to procure the leases. Mr. Brown was Vice–President of a company called Brannock Associates.

In February of 1987, new leases had not been signed, and People's Drugstore quit the premises. Later on, the District of Columbia expressed interest in renting the entire premises, and on March 10, 1987 Finard and Capitol met and discussed the possibility of Capitol approving a lease if it represented a certain minimum net present value. After this meeting, Capitol, on March 18, 1987, sent Finard a letter encouraging Finard to procure a lease for the entire building. Capitol also enclosed a table of minimum net present values the leases were to represent. However, on April 2, 1987, Capitol sent Finard another letter stating that "[a]ny authorization that may be given to proceed with negotiating any leases should not, of course, be construed as an agreement as to any consideration that might become payable to Finard if such leases should be entered into." Defendant's Exhibit 13.

The June 30, 1987 deadline eventually passed, and Finard did not deliver a lease to Capitol, nor did it pay Capitol the $60,000 as compensation for Capitol's leasing costs. On July 6, 1988, over one year later, Finard finally delivered to Capitol a single five year lease with the District of Columbia government for the entire building. Under this lease, rent was to be paid to Capitol beginning April 1, 1987 for all floors except the first floor of the building. Rent was to be paid for the first floor commencing April 1, 1988. The tenant also had the option to renew the lease for an additional five year period. Two days after delivering the lease, Finard demanded release of the promissory note. Capitol refused to comply with this demand and this litigation ensued.

### III  *Discussion*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). To establish there is a genuine issue, the non-moving party must present evidence "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment it must be determined "whether there is a need for a trial, whether, in other words, there are any

---

**3.**  *See supra* note 2.

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

▮ In this case, we find no dispute of any material issues. This case involves the application of undisputed facts to a contract which is clear and unambiguous. When a contract is unambiguous, it is to be interpreted by the court rather than by the jury. *Kass v. William Norwitz Co.*, 509 F.Supp. 618, 623 (D.D.C.1980); *Spellman v. American Security Bank*, 504 A.2d 1119, 1127 (D.C.1986). Thus, "the contract speaks for itself and the liabilities of the parties must be determined by its plain and obvious meaning." *Siegal v. Banker*, 486 A.2d 1163, 1166 (D.C.App.1984).

Both parties agree that the lease Finard finally delivered to Capitol did not meet the requirements of the Agreement. Finard did not deliver two leases covering the Government Space and the Retail Space for ten years each. The single lease it delivered covered the Government Space for five years, and the Retail Space for five years, and for one year only part of the Retail Space was rented. This lease was delivered July 6, 1988, over one year past the June 30, 1987 deadline in the Agreement. Clearly, Finard did not meet its obligations under the Agreement as clearly written.

### A. Finard Is Not Entitled To Equitable Relief

Finard, in its motion, attempts to excuse its non-compliance by characterizing its suit as "equitable in nature." It states that it seeks "its due compensation after having conferred to Capitol Corporation the full benefit it requested." Plaintiff's Memorandum at 1. This, of course, is not true. Moreover, Finard may not now seek equitable relief when its compensation is specifically set forth in a written contract agreed to by the parties. *See Chancellor v. L.J. Hooker Commercial Real Estate, Inc.*, 690 F.Supp. 35, 39 (D.D.C.1988); *Wilderness Society v. Cohen*, 267 A.2d 820,

822 (D.C.App.1970) (neither theory of restitution, *quantum meruit* nor unjust enrichment, is available when requested relief is barred by contract terms). Whatever relief Finard may seek must be evaluated in terms of compliance or non-compliance with the Agreement. Finard seems to admit as much, since its complaint states that it is entitled to be compensated "[p]ursuant to the Assignment Agreement", and in its motion it does not seek to prove any specific amount by which Capitol has been unjustly enriched. In its summary judgment motion Finard lamely asserts argument by which it seeks to prove that it is entitled to compensation under the Agreement. These arguments will be dealt with in turn.

### B. Finard's Untimely Delivery Precludes Recovery

▮ It is clear from an examination of the Agreement that time was of the essence under the Agreement. The Agreement sets forth four different periods of time in which Finard might deliver the lease, and provides for a decreasing level of compensation as time progressed. If the lease was delivered by the closing date, Finard would be entitled to the full million dollar promissory note. For each subsequent period after the closing date, a certain amount is deducted from the one million dollar promissory note, and this amount increased as time got closer to the June 30, 1987 deadline. The Agreement specifies that after June 30, 1987, Finard is not entitled to be compensated via the promissory note, but would only receive a refund of the $60,000 it was supposed to pay Capitol for its leasing costs.[4]

Under District of Columbia law:

It is well established that parties to an agreement may make time an essential part of the contract and in such cases, the failure by one of the parties to perform his part of the obligation within the time prescribed discharges the other from all liability under the contract. 6 Williston *Contracts* § 846 at 181 (3d ed.).

---

**4.** *See supra* note 2 and accompanying text.

*Siegal v. Banker*, 486 A.2d 1163, 1165 (D.C.App.1984). In this case, the parties agreed to tie the amount of compensation to the timeliness of delivery. Such an Agreement clearly manifests the importance of timely delivery. In such a case, the exact words, "time is of the essence" do not have to appear in the agreement.[5] *See id.* (the exact phrase "time is of the essence" is not necessary when "definite terms of the contract show the parties regarded time of performance to be of vital importance"). We hold that time was of the essence in this agreement, and Finard's failure to deliver the leases by June 30, 1987 precludes Finard from recovering the promissory note.

Finard argues that delivery was effectuated on June 30, 1987, because the lease it delivered had a rent effective date of June 30, 1987. However, as set forth above, Section 3.4 of the Agreement explicitly refers to the time from which rent will be paid under the New Leases as a "Rent Effective Date." In contrast, "Lease Delivery Date" is defined in Section 5.3 of the Assignment Agreement as "the date upon which the last of the New Leases to be delivered by Finard is delivered to Capitol Corporation." Clearly, Lease Delivery Date is not synonymous with Rent Effective Date. In order to comply with the Agreement, Finard had no choice but to procure new leases with Rent Effective Dates which complied with the dates set forth in Article 3.4 of the Agreement. The date by which Finard could deliver the leases was more flexible, but Finard lost its right to the promissory note when it failed to deliver the leases by June 30, 1987. Because the two terms had such different meanings in the Agreement, Finard's claim that the terms are somehow synonymous must be rejected.

Further, Finard's claim that Capitol waived the provision of the Agreement requiring delivery of the leases by June 30, 1987 is not supported by the record. Capitol has submitted two letters in support of its motion for summary judgment in which Capitol informed Finard that it did not deliver the leases by the deadline, and that Capitol was not waiving any of its rights under the Agreement. Defendant's Exhibits 17 and 18. In the second of these letters Capitol demands Finard pay the $60,000 in leasing costs as required under the Agreement. Defendant's Exhibit 18. In sum, both parties agree that the leases were not delivered until July 6, 1988, and there is no showing that Capitol waived Finard's obligation to deliver the leases by June 30, 1987. Finard's claim that it is now entitled to compensation under the promissory note when it so clearly failed to meet the terms of the Agreement is without merit.

### C. The Agreement Was Not Modified As Alleged By Finard

In order to bolster its weak position under the Agreement, Finard contends that the Agreement itself was modified by the parties after People's Drugstore unexpectedly quit the premises in February, 1987. Finard asserts that as a result of this unexpected event, the parties modified the Agreement to permit Capitol to evaluate a lease Finard supplied, not by reference to the terms of Article 3 of the Agreement, but by a new set of criteria, which rated leases according to the net present value of the revenues they would produce. Finard has submitted two documents in support of its argument: (1) minutes from a meeting between the parties which occurred on March 10, 1987, in which the parties discussed the present value method of evaluating leases; and (2) a March 18, 1987 letter from a representative of Capitol which instructed Finard's broker to proceed with negotiations for the leases, and which used the net present value method to evaluate the prospective leases. Plaintiff's Exhibits E and F.

In refutation, Capitol offers evidence that these communications were not con-

---

5. As was said in another context, by the late Justice Cardozo when Chief Judge of the New York Court of Appeals, "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal." *Wood v. Lady Duff–Gordon,* 222 N.Y. 88, 90, 118 N.E. 214 (1917).

sidered by either party as amendments to the Assignment Agreement, and argues persuasively that the original Agreement continued to be in full effect without modification. Specifically, Capitol's representative sent a letter to Finard stating if Capitol approved a lease that was evaluated under the net present value theory this would

> not in any way imply [Capitol's] approval of the leasing commission or capitol payment portion of the calculations. My client [Capitol] wishes to deal directly with you concerning all leasing commission that may be payable in connection with the current negotiations.

Defendant's Exhibit 15.

Finard's argument that the commission schedule was modified by the alleged amendments to the Agreement is belied by an examination of a subsequent draft amendment to the Agreement that was considered by the parties but never adopted. *See* Defendant's Exhibit 11. This draft amendment is dated December 7, 1987, and is entitled "First Amendment to Assignment Agreement." *Id.* The Draft Amendment was negotiated six months after the June 30, 1987 deadline had passed, and states that "[e]xcept as modified by this Amendment, the Assignment Agreement shall remain in full force and effect in all respects." Defendant's Exhibit 11 at 7.

The draft amendment further states that "the only lease capable of being delivered to Capitol Corporation by Finard is a 'Non–Complying' Lease under Article 6 of the Assignment Agreement." Defendant's Exhibit 11 at 4. This passage refers to Article 6 of the Agreement which defines a "Non–Complying Lease" as any lease "which does not conform to the specific criteria set forth in Article 3." Assignment Agreement, Section 6.1. The commission for a Non–Complying lease would be four percent of the fixed rent during the initial term of the lease. *Id.* Section 6.1 further states that this shall be "the sole

compensation received by Finard for the procurement of a Non–Complying Lease, and in no event shall Finard be entitled to the delivery of the Promissory Note in the amount of $1,000,000 described in Article 5 as consideration for the procurement of a Non–Complying Lease." *Id.*

The draft "First Amendment" completely contradicts Finard's allegation of a March, 1987 modification of the agreement. Therefore, it is not surprising that Finard vigorously contested the production of the Draft First Amendment and only produced this document upon Court Order. *See* Order dated November 30, 1989. The Draft Amendment contains no indication that the Agreement had been previously modified as alleged by Finard nor that modification had been seriously considered. The Draft Amendment is also evidence that as of December, 1987, Finard was not capable of delivering a lease which would entitle it to payment under the promissory note because the deadline under the Agreement had passed. In sum, there is no genuine dispute that the Agreement was modified in the manner alleged by Finard. Plaintiff's claim to the contrary is sheer makeweight.

**D. The Leasing Commissions Due Brannock Associates**

■ The last issue that needs to be addressed is the liability for leasing commissions that are due Brannock Associates for its efforts in procuring the lease for Finard. It is clear that Finard did not supply Capitol with a lease that met the criteria of Section 3.1(b)(i) of the Agreement. Section 3.1(b)(i), required, among other things, that the new Government Lease procured cover a ten year term. Finard only supplied Capitol with a five year lease.[6] Thus, under Section 8.2 of the Agreement, Finard is responsible for leasing commissions owed to Brannock Associates.

**IV Conclusion**

We find that the contract in issue is unambiguous, and that there is no genuine

---

**6.** Section 3.2 of the Agreement required that the new Drugstore Lease also be for a ten year term. No such lease was ever provided.

question that Finard did not comply with the contract. Further, there is no evidence upon which a reasonable fact finder could base a finding that the contract had been amended in such a way as to entitle Finard to compensation. Finard's motion for summary judgment is denied, and Capitol's motion for summary judgment is granted.

An Order and Judgment consistent with the foregoing has been entered this day.

### ORDER AND JUDGMENT

Upon consideration of each party's motion for summary judgment, the oppositions thereto, and the entire record herein, and for the reasons stated in an accompanying Memorandum Opinion entered this day, it is by the Court this 16th day of October, 1990,

ORDERED that plaintiff's motion for summary judgment is denied; and it is

ORDERED that plaintiff's complaint is dismissed with prejudice; and it is

ORDERED that defendant's motion for summary judgment is granted; and it is

ORDERED, ADJUDGED, and DECREED that Finard & Company, Inc. ("Finard") breached the terms of its contract(s), agreement(s), and assignment(s) with Capitol 801 Corporation ("Capitol"); and it is

ORDERED, ADJUDGED, and DECREED that Capitol is entitled under the terms of its contract(s), agreement(s), and assignment(s) with Finard to (a) the return by the Escrow Agents of the Promissory Note and the Deed of Trust, (b) the forgiveness of the principal balance of the Promissory Note, as well as an any accrued interest, and (c) the payment by Finard of interest accrued on the sum of sixty thousand dollars ($60,000) from July 1, 1987 to July 1, 1988; and it is

ORDERED that (a) the Escrow Agents return the Promissory Note and the Deed of Trust to Capitol and that these instruments be marked "Cancelled", (b) that the principal balance of the Promissory Note, as well as any accrued interest, be forgiven, and (c) Finard pay Capitol interest accrued on the sum of sixty thousand dollars ($60,000) from July 1, 1987 to July 1, 1988; and it is

FURTHER ORDERED that Finard pay any and all leasing commissions owed or alleged to be owed in connection with the lease procured for Capitol for its building at 801 North Capitol Street, N.E., Washington, D.C., including, but not limited to, commissions claimed by Brannock Associates, Inc.