976 F.2d 1444
 298 U.S.App.D.C. 140
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
FINARD & COMPANY, INC., Appellant,
v.
CAPITOL 801 CORPORATION, Appellee.
 No. 91-7016.
 United States Court of Appeals, District of Columbia Circuit.
 Sept. 23, 1992.
 
 Before HARRY T. EDWARDS, KAREN LeCRAFT HENDERSON and RANDOLPH, Circuit Judges.
 
 JUDGMENT
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties and arguments by counsel. After full review of the case, the court is satisfied that appropriate disposition of the appeal does not warrant an opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the decision of the district court is affirmed except to the extent it declared Finard & Company, Inc., liable to Brannock Associates, Inc., for leasing commissions, and it is
 
 
 3
 FURTHER ORDERED and ADJUDGED that if Capitol 801 Corporation is subsequently held to owe leasing commissions to any party in connection with leases Finard & Company, Inc., procured, or attempted to procure, for Capitol for its building at 801 North Capitol Street, N.E., Washington, D.C., Finard & Company, Inc., shall pay any and all such leasing commissions. No determination is made in this case regarding whether any leasing commissions are, in fact, owed to Brannock Associates, Inc., or any other party.
 
 
 4
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 5
 On November 24, 1986, Finard & Company ("Finard") entered into an Assignment Agreement ("Agreement") with Capitol 801 Corporation ("Capitol") to procure two commercial leases for Capitol. Under the Agreement, Finard would receive a million dollar promissory note if, prior to June 30, 1987, it delivered two leases meeting criteria specified in Article 3. Article 5.5 of the Agreement provided that if Finard failed to deliver the leases by June 30, 1987, the promissory note would be turned over to Capitol, and Finard also would become liable to Capitol for an additional $60,000. Finard would be entitled to a refund of the $60,000 if it ultimately delivered leases to Capitol. On July 6, 1988--more than one year after the June 30, 1987, deadline had passed--Finard delivered to Capitol a single lease that failed to comply with Article 3's requirements.
 
 
 6
 On cross motions for summary judgment in this diversity action brought by Finard, the district court granted Capitol's motion, awarding Capitol the promissory note and interest on $60,000 for the period between July 1, 1987, and July 1, 1988. Finard appeals this judgment, the district court's earlier decision denying Finard leave to amend its complaint, and the court's order holding Finard liable for leasing commissions owed in connection with its procurement of the leases.
 
 
 7
 We are in agreement with the district court that Finard's untimely delivery of the leases precludes it from receiving the million dollar promissory note. Even if the parties had modified Article 3 of the Agreement to permit the procurement of leases meeting different criteria, as Finard claims, Finard thus cannot prevail.
 
 
 8
 As the district court correctly noted, the Assignment Agreement made "time of the essence." See Siegel v. Banker, 486 A.2d 1163, 1165 (D.C.1984). Article 5.5(a) provided that the million dollar promissory note was to be returned to Capitol "[i]f Finard fail[ed] to deliver the New Leases on or before June 30, 1987." Article 5.5(b) permitted Finard to deliver leases after June 30, 1987, but provided that "then Capitol Corporation shall, as Finard's sole compensation, refund to Finard the payment in the amount of Sixty Thousand [dollars]" (emphasis added). Article 5.5(c) stated in all capital letters that Finard was entitled to the million dollars only if it was in compliance with all terms of the Agreement.
 
 
 9
 Finard argues that even if the Agreement made "time of the essence," Capitol waived the requirement. But Article 13 of the Agreement provides that "[n]o modification or waiver of any of the terms of this Agreement shall be valid unless in writing." There is no document in the record even suggesting that Capitol waived the requirement for delivery by June 30, 1987. In addition to the lack of any written waiver, there is nothing to indicate that Capitol, through its conduct, relinquished its right to insist on timely delivery. It is true, as Finard stresses, that Capitol did not exercise its right to collect the million dollar note on July 1, 1987. But we cannot see how Capitol's inaction amounted to a waiver of its right to the money. The Agreement does not support such a conclusion and neither does the record. On two separate occasions Capitol wrote letters to Finard stating that Capitol was retaining its right to collect the million dollar note. On July 8, 1987, one week after timely performance was due, Capitol sent a draft of a lease to Finard and wrote, "we are delivering the enclosed draft to you without waiving any of our client's rights under the terms of the Assignment Agreement, including the terms pertaining to the dates by which a lease is to be delivered...." On December 11, 1987, another letter to Finard noted Finard's failure to comply with the June 30, 1987, delivery date and stated: "Finard is not entitled to any commission or other compensation in the event that Capitol Corporation should hereafter enter into what might, but for the date it is procured and entered into, constitute a Non-Complying Lease."
 
 
 10
 There is nothing to Finard's additional point that Capitol's efforts to encourage Finard to deliver a lease after June 30, 1987, constituted a waiver. Under Article 5.5(b) of the Agreement, by delivering leases after June 30, 1987, Finard still stood to gain the $60,000 it would otherwise have been obligated to pay Capitol. The possibility of receiving $60,000 easily explains Finard's efforts to procure a lease after the June 30, 1987, deadline had passed. In fact, in its letter of December 11, 1987, in which Capitol restated its right to the million dollar promissory note, Capitol informed Finard that it was willing to waive its right to the $60,000 if Finard could provide Non-Complying leases. It is therefore apparent that the Assignment Agreement made time of the essence and none of Capitol's subsequent actions waived that requirement.
 
 
 11
 Finard also appeals the district court's order that Finard pay all leasing commissions owed in connection with the procurement of Capitol's leases. Finard contends that the opinion erroneously decided the issue of Finard's liability to Brannock Associates, Inc. ("Brannock"), which apparently performed services at the behest of Finard, but was not a party to this litigation. Article 8.2 of the Agreement makes Finard liable for "any leasing commissions owed or alleged to be owed in connection with its procurement or attempted procurement of leases." Although the district court correctly relied on this provision when it ordered Finard to pay any leasing commissions arising out of the Agreement with Capitol, the question whether any commissions were owed to Brannock was not before the court. The district court's ruling on leasing commissions is therefore affirmed only to the extent that it holds Finard liable for any leasing commissions that are subsequently found to exist.
 
 
 12
 We reject Finard's remaining arguments substantially for the reasons the district court stated in its opinion.