BRANNOCK ASSOCIATES,
INC., Plaintiff,

v.

CAPITOL 801 CORPORATION

and

Finard & Company, Inc., Defendants.

Civ. A. No. 91–1863.

United States District Court,
District of Columbia.

Nov. 25, 1992.

Douglas M. Bregman, Walter Lee, Bethesda, MD, for plaintiff.

Joseph Rosenberg, Rockville, MD, for defendant Finard.

Judah Lifschitz, Randal W. Wax, Washington, DC, for defendant Capitol 801.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

In this case [1], we are presented with yet another set of leasing disputes surrounding the commercial lease agreements between Brannock Associates, Inc. ("Brannock"), Finard & Co., Inc. ("Finard"), and Capitol 801 Corporation ("Capitol"). While this diversity action primarily concerns the leasing commission allegedly owed to Brannock by defendants, we also take this opportunity to review defendants' claims for indemnification and Capitol's Motion for Rule 11 Sanctions.

Before the Court are plaintiff Brannock's Motions for Summary Judgment on its claims against Finard and Capitol and Motion for Summary Judgment on Finard's counterclaim; defendant Finard's Motions for Summary Judgment against Brannock as to Brannock's claim and Finard's counterclaim; and defendant Capitol's Motion for Summary Judgment against Brannock on Brannock's claim and against Finard on its counterclaim, Motion for Summary Judgment as to Finard's cross-claim, and Motion for Rule 11 Sanctions against Finard.

### I. *Background*

The current set of disputes arises from a contract to purchase and lease units at 801 North Capitol Street in Northeast Washington, D.C. On November 24, 1986, defendant Finard, which owned the rights to purchase the building, assigned those rights to Capitol under an "Assignment Agreement." Finard retained the right to receive additional compensation of $1,000,000 from Capitol, held in trust, if it procured two commercial leases for Capitol under the terms of that agreement.[2] Under the Assignment Agreement, the parties agreed to obtain the services of H.L. Rust Company t/a Jackson–Cross Company ("Jackson–Cross") and Eagle Realty and Business International ("Eagle Realty") in procuring the commercial leases. Under

---

1. Upon receipt of the Court of Appeals opinion in *Finard & Co., Inc. v. Capitol 801 Corp.*, No. 91–7106, 976 F.2d 1444 (Table), 1992 WL 266115 (D.C.Cir. Sept. 23, 1992) (*"Finard II"*), which substantially affirmed our earlier opinion, 749 F.Supp. 15 (D.D.C.1990) (*"Finard I"*), we directed the parties to address any remaining issues. They have responded *in extenso*.

2. Under Section 5.5 of the Agreement, Finard was entitled to receipt of the $1,000,000 promissory note if it delivered two leases in compliance with Article 3 of the Agreement prior to June 30, 1987. If the lease were delivered after June 30, 1987, Capitol would retain the promissory note and Finard would become liable to Capitol for $60,000. The $60,000, however, would be refunded to Finard upon the subsequent delivery of a lease.

Section 8.2 of the Agreement[3], Finard also agreed to bear the costs of any leasing commissions for brokers used in obtaining any leases which did not comply with the terms of the Agreement outlined in Article 3.

After signing the Assignment Agreement, Finard retained the services of real estate broker Percy A. Brown at Jackson–Cross to procure the leases. In March 1987, Brown left Jackson–Cross and became Vice–President of Brannock. By agreement with Finard and Capitol, Brannock obtained the deal to procure leases for 801 North Capitol. On July 6, 1988, Brannock delivered to Capitol a fully executed five year lease with the District of Columbia government at 801 North Capitol providing for a total of $9,353,507.00 in fixed rent to be paid over the five year term.

Following the execution of the lease, Brannock submitted to Finard and Capitol a request for the standard leasing commission of 2.5% of the gross lease value of $9,353,507.00, totalling $233,838.00. Finard subsequently filed a claim against Capitol with this Court, seeking to obtain delivery of the $1,000,000 promissory note for obtaining the 5–year lease with the D.C. government and to hold Capitol liable for the leasing commission claimed by Brannock. In *Finard & Co., Inc. v. Capitol 801 Corp.*, 749 F.Supp. 15 (D.D.C.1990) (*"Finard I"*), we held that Finard was not entitled to the $1,000,000 because it had failed to deliver a lease complying with the terms of the Assignment Agreement.[4] We further held that, under Section 8.2 of the Assignment Agreement, Finard was liable for all leasing commissions owed to Brannock for procuring a lease which failed to comply with Article 3. *Id.* at 20.

The Court of Appeals substantially affirmed the decision in a Memorandum Opinion, holding that Finard could not collect on the $1,000,000 promissory note. *See Finard & Co., Inc. v. Capitol 801 Corp.*, No. 91–7106, 976 F.2d 1444 (Table), 1992 WL 266115 (D.C.Cir. Sept. 23, 1992) (*"Finard II"*). With respect to Brannock's commission, the Court of Appeals held that Finard would be liable for any commissions found to be owed, but held that liability to Brannock itself was not before the court since Brannock was not a party to the action. *Id.*, 1992 WL 266115 at *2.

Brannock meantime filed the present action against Finard and Capitol to obtain $233,838.00 in leasing commissions. That issue is now ripe for review, along with defendants' Motions for Summary Judgment on other claims.

## II. *Discussion*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The burden is on the non-moving party to present evidence that a genuine issue exists "such that a reasonable jury could return a verdict for a non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In viewing the evidence, the court must draw all inferences in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. at 2513.

### A. *Leasing Commissions Claimed By Brannock*

Brannock has moved for summary judgment against both Finard and Capitol, al-

---

**3.** Section 8.2 provides that

Finard shall bear the expense of any and all leasing commissions owed or alleged to be owed in connection with its procurement or attempted procurement of the New Leases, and Non–Complying Lease, any New Tenant Lease or any other lease (except as otherwise provided in Section 3.1(b)(i) in this Agreement, including any commission owed or alleged to be owed pursuant to Paragraph 19 of the Contract.

**4.** In *Finard I,* we held that Section 5.5 of the Assignment Agreement required delivery of the lease prior to June 30, 1987 in order to collect on the $1,000,000 promissory note and rejected Finard's argument that the requirement for timely delivery was subsequently waived. 749 F.Supp. at 20. Because Finard delivered the lease over one year later, we held that Finard was not entitled to $1,000,000, but could recover the $60,000 paid to Capitol upon delivery of the lease less interest accrued on that sum from July 1, 1987 to July 1, 1988. *Id.* at 21.

leging that defendants are liable to Brannock for $233,838.00 in leasing commissions. Brannock asserts that Capitol is liable on the theories of *quantum meruit* and unjust enrichment.[5] Brannock also moves for summary judgment on its claims against Finard on the theories of breach of contract and unjust enrichment. Both defendants have filed Motions for Summary Judgment in opposition to Brannock's claims.

### 1. *Liability of Capitol*

With respect to Capitol, it is necessary to note at the outset that *Finard II* prevents our holding Capitol liable for any part of the payment of Brannock's claim for leasing commissions. In its Memorandum Opinion, the Court of Appeals held that, pursuant to Section 8.2 of the Assignment Agreement, "if Capitol 801 Corporation is subsequently held to owe leasing commissions to any party in connection with leases Finard & Company, Inc., procured, or attempted to procure, for Capitol ......, Finard & Company, Inc., shall pay any and all such leasing commissions." *Finard II*, 1992 WL 266115 at *2. Therefore, even if Capitol were found to owe Brannock for part or all of the commission, Finard would be obligated to pay Capitol's debt.

The sole issue for our consideration with respect to Capitol, then, is whether Capitol has accrued any debt to Brannock, which Finard is obligated to pay. Brannock asserts that Capitol is, in fact, liable for the full amount of the commission under the theories of *quantum meruit* and unjust enrichment because Capitol enjoyed the full value of Brannock's services in procuring the lease with the D.C. government. Since the standard commission is 2.5% of the total of the fixed rents payable under the lease ($9,353,507.00), Brannock claims that Capitol should be held liable for the full $233,838.00. *See* Brannock's Motion at 30.

■ In ordering compensation under a theory of *quantum meruit* or unjust enrichment, the court must find that the following criteria are met:

(1) valuable services must be rendered [by the plaintiff];

(2) for the person sought to be charged;

(3) which services were accepted by the person sought to be charged, and enjoyed by him or her; and

(4) under such circumstances has reasonably notified the person sought to be charged that the plaintiff, in performing such services, expected to be paid.

*TVL Associates v. A & M Constr. Corp.*, 474 A.2d 156, 159 (D.C.App.1984). We fail to find that Brannock has satisfied all of the above criteria with regard to Capitol.

■ To begin with, we find that Brannock "rendered services" for Finard rather than Capitol. Under the terms of the Assignment Agreement, Finard had the option to gain further compensation by obtaining leases in 801 North Capitol. *See* note 1 *supra*. In pursuit of the lease with the D.C. government, Finard procured the services of real estate broker Percy A. Brown. While negotiating with the D.C. government, Brown was therefore in a position of acting as Finard's agent, not Capitol's.

Brannock contends, however, that after Brown moved to Brannock, Capitol also authorized Brannock's services as Capitol's agent. *See* Brannock's Motion at 28. Brannock refers to a letter sent by Capitol's agent, Oliver J. Munday of Jones Lang Wootten USA, on March 18, 1987, in which Munday told Percy Brown to proceed with the lease negotiations with the D.C. government. *Id.*

We refuse to find, however, that this letter authorized Brannock to proceed as an agent for Capitol. The letter followed a discussion between Capitol and Finard on March 10, 1987 concerning the possibility of Finard's procuring a non-complying lease. As we stated in *Finard I*, Munday's letter was sent to "instruct[ ] *Finard*'s broker to proceed with negotiations for the leases." *See* 749 F.Supp. at 19 (emphasis

---

5. In its Motion for Summary Judgment, Brannock has dropped its claim for contractual relief, choosing to proceed only with a claim in "quasi-contract." *See* Brannock's Memorandum in Support of its Motion for Summary Judgment ("Brannock's Motion") at 27–30.

added). Finard itself has acknowledged that Brannock "performed services at the *behest of Finard,* not Capitol." Finard's Statement of Remaining Issues at 5 (emphasis supplied). Accordingly, we find that the first two requirements of the *TVL* test are not met.[6]

Furthermore, Brannock has not satisfied the fourth part of the *TVL* test because it failed to put Capitol on notice that it expected payment from Capitol for its services. As had been agreed upon by Capitol and Finard, the Assignment Agreement governed payment of brokerage fees. Since Capitol was presented with a non-complying lease (i.e., one failing to meet the terms of Article 3), Capitol reasonably believed that Finard was liable for the fees owed Brannock in accordance with Section 8.2 of the Agreement. Brannock has shown no evidence that another arrangement superceded that established in the Assignment Agreement.

Because we find no genuine dispute of fact surrounding Brannock's claim and find that Brannock has failed to satisfy the above criteria, we hold that Capitol owes Brannock no part of the leasing commission. Accordingly, we deny Brannock's Motion and grant Capitol's Motion with respect to Brannock's quasi-contract claims against Capitol.

### 2. *Liability of Finard*

■ Brannock has also moved for summary judgment against Finard for payment of $233,838.00 as its leasing commission on the theories of breach of contract and unjust enrichment.[7] Brannock asserts that there was an agreement with Finard for a commission of that amount, as evidenced primarily through a letter Finard sent to Capitol demanding reimbursement for the $233,838.00 it owed Brannock.[8] *See* Brannock's Motion at 20.

Finard, however, submits that the letter was a request for compensation for both Brannock and Eagle Realty, in accordance with the terms of the Leasing Commission Agreement.[9] *See* Finard's Opposition to Brannock's Motion at 34. Finard also maintains that Brannock is bound by the terms of the Leasing Commission Agreement, and that, under its terms, Brannock is eligible for a commission of only $88,-

---

6. There is no doubt that Capitol benefitted from Brannock's services, in that Brannock helped negotiate a lease for Capitol. As suggested above, Capitol benefitted, however, as a third-party beneficiary to the agreement between Finard and Brannock, rather than as the beneficiary of a quasi-contractual relationship with Brannock. Further case law suggests that third-party beneficiaries are under no obligation to pay for services because no *unjust* enrichment has occurred. *See, e.g., Gilbane Bldg. Co. v. Nemours Foundation,* 606 F.Supp. 995, 1008 (D.Del.1985), *later proceeding, Pierce Assoc. v. Nemours Foundation,* 865 F.2d 530 (3rd Cir. 1988), *cert. denied,* 492 U.S. 907, 109 S.Ct. 3218, 106 L.Ed.2d 568 (1989); *Burgess v. Grooms,* 81 A.2d 338, 339 (D.C.Mun.Ct.App.1951).

7. As it has recognized, Brannock can no longer argue that Finard is collaterally estopped from relitigating its liability for leasing commissions following the Court of Appeals' decision in *Finard I* since that decision held that liability to Brannock had yet to be determined. *See* Brannock's Statement of Remaining Issues at 3.

8. A letter from Murray W. Finard, Chairman of the Board of Finard, to Solomon Freshwater, President of Capitol, dated July 8, 1988, stated that

[p]ursuant to the provisions of Sub–Section 3.1(b)(i) of the Agreement, Finard & Company makes a further demand for payment of a reimbursement of its obligation to pay bona fide leasing commissions to Brannock Associates, Inc. in the amount of $233,838, such sum being equal to two and one half percent (2.5%) of $9,353,507, the sum of all payments of fixed rent reserved under the Delivered Lease.

9. The Leasing Commission Agreement, signed in May 1988 by Brannock and Finard, among others, resolved a separate lawsuit filed by Jackson–Cross for sales and leasing commissions earned in connection with 801 North Capitol Street.

Paragraph 1 of the Leasing Commission Agreement provides that

Finard, under Sub–Section 3.1(b)(i) of the Assignment Agreement shall make a demand on Capitol Corporation for a reimbursement of its obligations to pay bona fide leasing commission to Brannock, with Eagle cooperating, in an amount equal to 2.5% of the sum of all payments of fixed rent reserved under the Anticipated Lease.

000.00 upon the condition that Capitol compensate Finard.[10]  *Id.* at 33.

We fail to find that any of these documents constitute binding contracts governing the present situation.  Finard's letter cannot be said to be an agreement between Brannock and Finard since the letter was sent from Finard to Capitol.  If the letter is evidence of such an agreement between Brannock and Finard, Brannock has failed to provide proof of that contract.

Moreover, we do not find the Leasing Commission Agreement to be dispositive of Brannock's claim.  The terms of the Agreement appear to apply only to leases procured pursuant to Sub–Section 3.1(b)(i) of the Assignment Agreement, or a 10–year, Option A government lease.  Since the lease procured by Brannock was not such a lease, the terms of the Leasing Commission Agreement do not appear to be relevant.

Nor is it clear that Brannock is entitled to $233,838.00 as compensation under the theory of unjust enrichment.  Although the parties agree that 2.5% is the standard rate for a leasing commission, suggesting that the value of Brannock's services would be $233,838.00, Brannock made several statements indicating that Finard was liable only for $88,000.  *See* Deposition of C. Duke Brannock at 121–22, Exhibit 4, Finard's Motion for Summary Judgment. Since there is a dispute of material fact as to the value of Brannock's services, we deny Brannock and Finard's Motions for Summary Judgment with respect to Finard's liability to Brannock for the leasing commission.

**B.  *Claims for Indemnification***

A separate issue has also been raised regarding indemnification for expenses related to Brannock's filing of the present lawsuit.  Capitol has moved for summary judgment on its counterclaim against Finard, alleging that, under the Assignment Agreement, Finard is obliged to indemnify Capitol for all expenses related to Finard's failure to perform under the Assignment Agreement.  Finard, in turn, maintains that Brannock breached the Leasing Commission Agreement in filing suit against Capitol.  As a result, Finard has moved for summary judgment on its counterclaim against Brannock for indemnification of any payments to Capitol.

**1.  *Finard's Indemnification of Capitol***

 Turning first to Capitol's claim, we agree that Finard is obliged under the Assignment Agreement to indemnify Capitol for all costs related to these matters presently under consideration.  Under Section 11.1 of the Agreement [11], Finard has a duty to indemnify Capitol for its costs and expenses resulting from Finard's failure to perform under the Agreement.

Finard argues, however, that the present suit arose partly as a result of actions taken by Capitol and that Section 11.1 of the Agreement does not apply.  Specifically, Finard contends that the March 18, 1987 letter from Jones Lang Wootten USA created a separate agreement between Brannock and Capitol and that Capitol's breach of this agreement was, in part, the basis of Brannock's claim.  *See* Finard's Opposition to Capitol's Motion for Summary Judgment at 30.  Finard also alleges that a factual dispute exists as to whether Capitol con-

---

**10.**  Again, Finard refers to Paragraph 1 of the Leasing Commission Agreement, which provides:

> In the event that Capitol Corporation pays to Finard an amount for reimbursement of its obligation to pay bona fide leasing commissions, then such amount shall be distributed as follows:
> a.  Any cash or negotiable funds … received by Finard up to, but not exceeding, $88,000 shall be paid to Brannock upon its receipt by Finard;  and
> b.  Any cash or negotiable funds … received by Finard in excess of $88,000, shall be paid to Eagle upon its receipt by Finard.

**11.**  Section 11.1 of the Assignment Agreement specifies that:

> Finard agrees to defend and indemnify Capitol Corporation from any and all liability, loss or damage Capitol Corporation may suffer as a result of claims, demand, cost or judgments … (b) arising from the failure of Finard to fully perform its assigned duties, responsibilities and obligations under the Assignment (c) arising from Finard's attempt to procure the lease described in this Agreement and not caused, in whole or part, by acts of Capitol Corporation.

tributed to the delay in delivery of the lease. *Id.* at 31.

The issue of liability for the leasing commission was already decided in *Finard II*, however. The Court of Appeals affirmed that Finard had delivered a non-complying lease and that Finard alone was liable under Section 8.2 of the Assignment Agreement for any commission subsequently found to be owed Brannock. *See Finard II*, 1992 WL 266115 at *2. *Stare decisis* prevents us from now entertaining Finard's argument that Brannock is also at fault.

Therefore, since Finard was solely liable for paying the commission, and since Brannock filed its claim because Finard failed to perform that duty, we find that Finard is now liable under Section 11.1 of the Assignment Agreement for Capitol's costs and expenses in defending against Brannock's claims. Accordingly, we grant Capitol's Motion for Summary Judgment with respect to its claim for indemnification by Finard.

### 2. *Brannock's Indemnification of Finard*

■ Finard contends that, if it is obliged to indemnify Capitol for Capitol's costs in defending Brannock's suit, Brannock should in turn indemnify Finard for that amount. Indemnification is appropriate, Finard maintains, because, in filing a claim against Capitol, Brannock breached a provision in the Leasing Commission Agreement waiving its right to bring suit. *See* Finard's Memorandum in Support of Motion for Summary Judgment ("Finard's Motion") at 34–35.[12] Finard therefore suggests that Brannock is responsible for Capitol's expenses in defending against Brannock's claims, and that Brannock accordingly should be held liable for those costs. Brannock has moved for summary judgment in opposition to Finard's claim.

Again, we do not find the Leasing Commission Agreement to be dispositive of this issue since that Agreement applied only to leases complying with Section 3.1(b)(i) of the Assignment Agreement. Since Finard failed to procure such a lease, the terms of the Leasing Commission Agreement would appear to be irrelevant. We therefore decline to find Brannock liable for indemnification of Finard for paying Capitol's expenses in defending Brannock's suit. There is no showing that Brannock breached a contractual agreement waiving these claims.

Assuming the absence of any agreement between Finard and Brannock, we find no other grounds to hold Brannock liable for Finard's payment to Capitol. While we might find a right to indemnification if the equities of the case so dictated, we also decline to do so here. *See, e.g. Myco, Inc. v. Super Concrete Co.*, 565 A.2d 293, 297 (D.C.App.1989) ("Indemnity is a common law remedy which shifts a monetary loss from one compelled to pay it to another whom equity dictates should bear it instead."). Brannock filed the present action against Capitol because of Finard's failure to pay its leasing commission. Clearly, Finard's inaction, rather than any actions taken by Brannock, are the root cause of this suit.

Accordingly, we deny Finard's Motion for Summary Judgment on its counterclaim to hold Brannock liable for indemnifying Finard for any payments to Capitol for court costs and expenses, and we grant Brannock's Motion on this point.

### C. *Capitol's Motion for Rule 11 Sanctions*

We turn, finally, to Capitol's Motion for Summary Judgment to dismiss Finard's cross-claim and to its Motion for Rule 11 Sanctions against Finard for filing that claim.

### 1. *Preclusion of Finard's Cross–Claim*

■ In its cross-claim against Capitol, Finard alleged that it was due $374,140.28 from Capitol for procuring a "Non–Complying Lease" pursuant to Section 6.1 of the Assignment Agreement. *See* Cross-claim

---

12. Finard points to paragraph 3 of the Leasing Commission Agreement, in which the parties agreed "that the decision to institute, maintain, settle and/or compromise litigation to procure such commission shall be made by Finard in its sole discretion." *See* Leasing Commission Agreement ¶ 3, Exhibit 25, Finard's Motion.

by Defendant Finard, ¶¶ 9–13. Section 6.1 states that, if Finard "entered into" a renewal lease on or before June 30, 1987 which does not conform to Article 3, then Capitol shall pay Finard 4% of the aggregate fixed rents. Finard contends that it entered into the lease on April 1, 1987, and is therefore owed 4% of the fixed rents of $9,353,507.00, or $374,140.28. *Id.*

Capitol has moved for summary judgment to dismiss Finard's claim on the ground that the matter was already litigated in *Finard I* and that Finard is now barred from raising the same claim under the doctrines of *res judicata*, collateral estoppel, and merger and bar. *See* Capitol's Memorandum in Support of Motion for Summary Judgment ("Capitol's Motion") at 11. Finard contends that the doctrines of *res judicata* and merger and bar do not apply because, pursuant to the holding in *Horn & Hardart Co. v. National R.R. Passenger Corp.*, 659 F.Supp. 1258 (D.D.C. 1987), *aff'd*, 843 F.2d 546 (D.C.Cir.1988), *cert. denied*, 488 U.S. 849, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988), it is now entitled to seek coercive relief. *See* Finard's Opposition to Capitol's Motion at 14 (citing *Horn & Hardart* for conclusion that party may file claim for coercive relief after court's prior ruling on same matter for declaratory judgment).

It is clear to us that *Horn & Hardart* does not bar the application of *res judicata* and merger and bar in this situation. The court in *Horn* explained that the Declaratory Judgment Act, 28 U.S.C. § 2202 [13], created a limited exception to the doctrines of *res judicata* and merger and bar in the instance when a party sought "further relief" from the same court in which it had previously won a favorable ruling for declaratory judgment. *Id.* at 1262. The

*Horn* court noted, however, that "[t]he plaintiff in the original action cannot have sought any coercive relief there, otherwise the ordinary rules of res judicata apply." *Id.* at 1265.

We find the issue in the case at hand to be far different from that presented to the court in *Horn*, however. In *Horn*, there had been only a claim for a declaratory judgment in the first suit, and so the court properly found that the Declaratory Judgment Act permitting "further necessary or proper relief" applied. Finard, on the other hand, filed an original claim for declaratory as well as coercive relief.[14] Moreover, Finard's cross-claim is not within the scope of relief permitted by the Declaratory Judgment Act. Finard's action for compensation under Section 6.1 of the Assignment Agreement is a separate claim for relief rather than one seeking "further necessary or proper relief based on a declaratory judgment or decree." [15] Since the exception created by the Declaratory Judgment Act is inapplicable to the present situation, the doctrines of *res judicata* and merger and bar are still relevant.

For *res judicata* to apply, it is well settled that four requirements must be fulfilled: 1) the parties must be identical in both suits; 2) the prior judgment must have been rendered by a court of competent jurisdiction; 3) there must have been a final judgment on the merits; and 4) the same cause of action must be involved in both cases. *See, e.g., U.S. Industries, Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 n. 21 (D.C.Cir.1985). If the requirements for *res judicata* are met, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that

---

**13.** 28 U.S.C. § 2202 provides that:
  Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

**14.** Finard's Prayer for Relief included a request for coercive relief "that this Honorable Court, pursuant to Title 28, Section 2202, order the Defendant to direct its Escrow Agents to carry out the relief required by such declaratory judg-

ment as hereinabove requested." *See* Finard's Complaint, Exhibit 54, Finard's Motion.

**15.** As Finard itself has acknowledged, the claim for relief under Section 6.1 was not filed in its original complaint. *See* Finard's Opposition to Capitol's Motion at 19. In fact, the claim for 4% of the aggregate fixed rents, not only is not "based on," but has no relation to Finard's claim for the return of the promissory note in *Finard I*.

action...." *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C.Cir.1983).

As Finard itself admits [16], its cross-claim would be barred if the traditional test of *res judicata* were applied since all elements of the four-part test are satisfied. There is an identicality of parties between the present cross-claim and *Finard I*. A final judgment was delivered in *Finard I*. Finally, even though the actual claim under Section 6.2 may not have been raised in the first action, Finard's cross-claim is still barred because it stems from the same cause of action that was litigated in *Finard I*: namely, Capitol's liability to Finard under the Assignment Agreement. We therefore find that Finard's cross-claim is precluded by *res judicata* [17] and grant Capitol's Motion for Summary Judgment to dismiss Finard's cross-claim.

### 2. *Motion for Rule 11 Sanctions*

■ Capitol has also moved for Rule 11 sanctions against Finard on the grounds that its cross-claim was duplicative of the litigation in *Finard I*. *See* Capitol's Memorandum in Support of Motion for Rule 11 Sanctions at 2. Capitol seeks sanctions in the form of reasonable expenses, costs, and attorneys' fees incurred in litigating this action.

Rule 11 imposes a duty on the signer of a pleading, motion, or paper to conduct a pre-filing inquiry of the relevant facts and law. *See* Fed.R.Civ.P. 11; *Southern Air Transport, Inc. v. American Broadcasting Cos.*, 877 F.2d 1010, 1017 (D.C.Cir.1989). A court must impose sanctions under Rule 11 where a pleading or paper is "(1) not well grounded in fact; (2) not warranted by existing law or good faith argument for the extension, modification, or reversal of existing law; or (3) interposed for any im-

proper purpose such as harassment or delay." *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174 (D.C.Cir.1985). In considering a motion for sanctions, the court is given "wide discretion" in determining whether there are factual or bad faith reasons to warrant sanctions. *Id.*

In the present case, Finard has exceeded the limits of good faith litigating in bringing its cross-claim. As stated, Finard should have realized that its claim against Capitol was barred after *Finard I* and that *Horn and Hardart*'s holding, upon which it relied, was irrelevant to the situation at hand. We must conclude that Finard's cross-claim was not well grounded in fact or warranted by existing law and that Finard acted in bad faith and for purposes of harassment or delay. Accordingly, we grant Capitol's Motion for Rule 11 Sanctions as hereinafter specified.

### *Conclusion*

After a full review of these Motions and the record, we grant Capitol's Motion and deny Brannock's Motion with respect to Capitol's payment of the leasing commission, and deny both Brannock and Finard's Motions with respect to Finard's payment of the leasing commissions. With respect to the issue of indemnification, we grant Capitol's Motion for Summary Judgment on its counterclaim against Finard, deny Finard's Motion for Summary Judgment on its counterclaim against Brannock, and grant Brannock's Motion for Summary Judgment on Finard's counterclaim. Finally, we grant Capitol's Motion to dismiss Finard's cross-claim and grant its Motion for Rule 11 Sanctions.

An Order and Judgment consistent with the above has been entered this day.

**16.** *See* Opposition to Capitol's Motion for Summary Judgment at 14 n. 1 ("Finard admits that under traditional *res judicata* principles, its only 'Non–Complying' Lease theory would be barred and Finard's only redress would be on appeal.").

**17.** We similarly find that Finard's claim is barred by the doctrine of merger and bar.
  According to the complementary principles of bar and merger, whether a party loses or wins relief in his initial action, the judgment embodies all his rights stemming from the trans-

action involved, and he is foreclosed from later seeking relief on the basis of issues he might have raised in the prior proceeding to support the original claim.
  *Brotherhood of Railroad Trainmen v. Atlantic Coast Line Railroad Co.*, 383 F.2d 225, 227 (D.C.Cir.1967), *cert. denied*, 389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839 (1968). As stated above, since the same cause of action was litigated in *Finard I*, Finard is now foreclosed from seeking relief in a claim which it could have raised in its original complaint.

## ORDER AND JUDGMENT

Upon consideration of each party's Motions for Summary Judgment, the opposition thereto, and the entire record herein, and for the reasons stated in an accompanying Memorandum Opinion entered this day, it is by the Court this 25th day of November, 1992,

ORDERED that plaintiff's Motion for Summary Judgment on its claims against defendants Finard and Capitol is denied; and it is

ORDERED that plaintiff's Motion for Summary Judgment with respect to Finard's counterclaim is granted; and it is

ORDERED that defendant Finard's Motion for Summary Judgment against plaintiff is denied; and it is

ORDERED that defendant Finard's cross-claim against Capitol is dismissed with prejudice; and it is

ORDERED that defendant Finard's counterclaim against Brannock is dismissed with prejudice; and it is

ORDERED that defendant Capitol's Motion for Summary Judgment against plaintiff is granted; and it is

ORDERED that defendant Capitol's Motion for Summary Judgment against Finard is granted; and it is

ORDERED that defendant Capitol's Motion for Rule 11 Sanctions against Finard for bringing its cross-claim against Capitol is granted, defendant Capitol to submit a list of reasonable expenses, costs, and attorney's fees within ten (10) days of the date of this order; and it is

FURTHER ORDERED, ADJUDGED, and DECREED that defendant Capitol is entitled under Section 11.1 of the Assignment Agreement to indemnification of its expenses in defending against Brannock's claims, defendant Capitol to submit a list of said costs and expenses within ten (10) days of the date of this Order.